# Glen Rock Motor Club *v.* York & Maryland Line Turnpike Co., Appellant.

*Constitutional law—Public Service Commission—Turnpike companies—Charters—Impairment of contract—Police powers.*

The Public Service Commission has jurisdiction to compel a turnpike company to maintain its road in good condition for travel in compliance with the duty imposed upon it by its charter, although such company was chartered prior to the adoption of the Constitution of 1874, although it never accepted the Constitution, and although the Public Service Company Act provided a different method of procedure and imposed a different and greater penalty for a failure of the company to perform its duties, than that imposed by the act by which it was chartered. The provisions of the latter act affect merely the remedy against the company for failure to perform its public duty, and does not impair any contract within the meaning of the constitutional inhibition.

The Public Service Commission has jurisdiction under the police powers of the Commonwealth, to compel a turnpike company chartered prior to the adoption of the Constitution of 1874, to perform its public duties.

The fact that a turnpike company may be compelled to expend a sum of money for the improvement of its road equal to or greater than the amount of its income, is no defense in proceedings to compel the company to maintain its road in good condition as required by the act under which it was chartered.

An order of the Public Service Commission directing a turnpike company wholly to reconstruct its road, will not be sustained to such an extent, where the evidence shows that only portions of the road were in bad condition, and that such portions may be repaired.

Argued April 20, 1916. Appeal, No. 2, March T., 1917, by defendant, from order of Public Service Commission, Complaint Docket No. 295, in case of Glen Rock Motor Club v. The York & Maryland Line Turnpike Company. Before ORLADY, P. J., HENDERSON, KEPHART, TREXLER and WILLIAMS, JJ. Order modified and affirmed.

Petition by the Glen Rock Motor Club against the

York & Maryland Line Turnpike Company to compel the company to put its road in good traveling condition.

The opinion of the Superior Court states the case.

*Error assigned* was the following order: Now, to wit, January 26, 1916, It is ordered: That the York and Maryland Line Turnpike Company shall reconstruct the route named in its charter in accordance with the terms therein specified within six months from the date hereof and thereafter maintain the same as provided in said charter.

*Richard E. Cochran,* with him *Smyser Williams* and *George Hay Kain,* for appellant.—The Public Service Company Law provides a different method of procedure, and imposes a different and greater penalty for such a failure on the part of the company and its officers. This impairs the contract: Bank of Penna. v. Com., 19 Pa. 144; Iron City Bank v. Pittsburgh, 37 Pa. 340; Southwark R. R. Co. v. Philadelphia, 47 Pa. 314; Com. v. Erie & Western Transportation Co., 107 Pa. 112; Hays v. Com., ex rel., 82 Pa. 518; Penna. R. R. Co. v. Philadelphia, 220 Pa. 100; Philadelphia & Reading Ry. v. County of Philadelphia, 228 Pa. 505.

The order of the Public Service Commission, from which this appeal is taken, is not only that the appellant must reconstruct its road—not portions of its road, but the whole of it within six months. Here we have a turnpike company whose funds, after paying salaries, taxes, maintenance, such as this appellant was able to put upon this road, leaves a balance of about $1,250.00 for payment of interest on borrowed money and the creation of a sinking fund for the payment of the principal.

Simply to state this proposition is to demonstrate the impossibility of carrying out the order of the commission in this case.

*W. F. Bay Stewart,* with him *James G. Glessner* and

*Frederick B. Gerber,* for Glen Rock Motor Club.—The Public Service Act does not impair the obligation of a contract: Bank of Pa. v. Com., 19 Pa. 144; Dubuque & Pacific R. R. Co. v. Litchfield, 64 U. S. (23 How.) 66; Oregon Ry. & Nav. Co. v. Oregonian R. R. Co., 130 U. S. 1; Long's App., 87 Pa. 114; Waggoner v. Flack, 188 U. S. 595; Penrose v. Erie Canal Co., 56 Pa. 46; Union Canal Co. v. Gilfillin, 93 Pa. 95; Sayres v. Com., 88 Pa. 291.

The commission has jurisdiction under the police power of the State: Norfolk & S. Turnpike Co. v. Virginia, 32 Supreme Ct. Rep. (U. S.) 829.

*William N. Trinkle,* with him *Berne H. Evans,* for the Public Service Commission.—The company has bound itself to furnish certain facilities to the public and the question of the means it uses to acquire those facilities is for neither the commission nor this court: Brymer v. Butler Water Co., 172 Pa. 489; Missouri Pac. Ry. Co. v. Kansas, 216 U. S. 262; Adena R. R. Co. v. Public Service Commission of Ohio, 110 N. E. 631.

OPINION BY HENDERSON, J., July 18, 1916:

The charter of the appellant company is to be read in connection with the charter of the Susquehanna and York Boro. Turnpike Road Company which was incorporated by the Act of March 19, 1804, P. L. 307, for the act of assembly of March 31, 1807, P. L. 116, incorporating the appellant creates the powers, authorities and privileges and declares the duties, qualifications, restrictions, penalties, etc., of that company by reference to like powers, franchises, duties and liabilities expressed in the charter of the Susquehanna & York Boro. Turnpike Road Company.   It will be seen by reference to these statutes that the appellant undertook to construct a road "fifty feet in width and at least twenty-one feet thereof to be made an artificial road bedded with wood, stone, gravel or any other hard substance well compacted together and

with sufficient depth to secure a solid foundation to the same and the said road shall be faced with gravel or stone pounded or other small hard substance in such manner as to secure a firm and as nearly as the materials will admit of it, an even surface"; and that after such construction it was the duty of the company to "forever hereafter maintain and keep the same in good and perfect order the whole distance aforesaid." The act provides that after the construction of the road the company shall give notice of the fact to the governor of the Commonwealth who shall thereupon appoint three disinterested persons to view and examine the same and report to him in writing "whether the said road is executed in a masterly and workmanlike manner according to the true intent and meaning of this act and if their report shall be in the affirmative then the governor shall by license under his hand and the lesser seal of this Commonwealth permit and suffer the said president, managers and company to erect and fix so many gates or turnpikes upon and across the said road as will be necessary and sufficient to collect the toll and duties hereafter granted to the said company upon all persons traveling on the same with horses, cattle, carts and carriages." The duty of the company was clear, therefore. By constructing the road in accordance with the conditions of its charter it became entitled to collect the tolls authorized thereby. Its contract was that it would construct and maintain the road as required by law in consideration for which it was permitted to collect toll for the use of its highway. The complaint of the motor club was that it failed to perform that part of its obligation which required it to maintain its road in good condition for travel and it was this question which the Public Service Commission was asked to examine and determine. The jurisdiction of the commission to consider the case is denied by the appellant on the ground that the company is exercising its franchises under a charter granted before the adoption of the Constitution

of 1874; that it never accepted its provisions and its rights are therefore not affected by the Constitution or laws passed thereunder; that the charter prescribed its duties, qualifications, restrictions, penalties, fines and forfeitures while the Public Service Company Act provides a different method of procedure and imposes a different and greater penalty for a failure of the company to perform its duties. It is not to be disputed that an act of incorporation is a contract between the State and the stockholders of a corporation and where the question is one of the repeal of a charter or its modification in essential particulars the consent of the incorporators is necessary to support such a change. The charters of private corporations were left by the present Constitution as it found them and so they must continue until the holders of them enter into new contracts with the State by accepting the benefits of subsequent legislation. But this applies only to the contract rights of the corporation. It does not include a remedy reserved to the Commonwealth or to private individuals for the enforcement of duties for the performance of which the corporation is bound. The provision of the appellant's charter "that if the said company shall neglect to keep the said road in good and perfect order for the space of five days and information shall be given to any justice of the peace of the county such justice shall issue a precept to be directed to any constable commanding him to summon three disinterested persons to meet at a certain time, in the said precept to be mentioned, at the place in said road which shall be complained of, etc.," does not create a contract right in the corporation to the exclusion of any other remedy which may be subsequently adopted by the State. It is not by its terms nor by implication a declaration that the only remedy which might be resorted to by the Commonwealth is the one therein provided for. There is a clear distinction between the obligation created by a charter and a remedy allowed by the legislature to enforce that obligation. It is estab-

lished law that a corporation takes nothing by its charter except what is plainly granted. In grants by the public nothing passes by implication. In the absence therefore of any stipulation of the charter binding the Commonwealth to the remedy by procedure before a justice of the peace for the enforcement of the charter obligation of the company there is no restriction on the legislature to adopt a different remedy deemed more efficient in the promotion of the public interests. The right to maintain a turnpike road and to collect toll thereon has not been impaired by the legislation creating the Public Service Commission and defining its powers. All that the corporation was authorized to do it may still do. The manner in which it is to be proceeded against is not a matter of charter right. It is a mere legal remedy reserved to persons interested and did not become absolute or exclusive by the enactment of the statute. The jurisdiction of the Commission can be sustained for another reason, however. The appellant is subject to the exercise of the police power of the Commonwealth and one of the most common occasions for the exercise of this authority is the regulation of public highways.

The objection that the appellant is required to expend a sum on the road equal to or greater than the amount of its income would have much weight if the proceeding were one to reduce the compensation which a public service corporation charged for services rendered. It could be alleged that rates proposed were confiscatory and that a fair return from the capital invested was denied the company; but we are here considering an alleged default of the corporation in performing its obligation to the public in providing a sufficient roadway and from that point of view the matter of profit to the corporators is not a controlling consideration. The performance of the duty required by the order of the commission may cause a loss and this is a circumstance to be considered in determining the reasonableness of the order; but when the question is whether a corporation is performing the obli-

gation to which it is bound as a necessary consequence of the acceptance and enjoyment of its corporate rights another consideration is paramount, to-wit: the duty of the company to the public, for it can not be said that an order requiring the performance of that duty even at a pecuniary loss is unreasonable. Until the appellant is able to say that it has performed its contract with the Commonwealth in supplying the kind of road described in its charter the argument that there is a loss of profit to the stockholders can not avail. There is weight, however, in the objection that the order of the commission is more comprehensive than the evidence justifies. It requires the appellant within six months from the date of the order to reconstruct the route named in its charter in accordance with the terms therein specified and thereafter maintain the same as therein provided. This on its face is a command to rebuild the road but a careful examination of the testimony brought up with the record fails to disclose a condition which imposes such an obligation on the appellant. After the lapse of a century it should be assumed that the committee appointed by the governor under the 12th Section of the Act of 1804, found the road to be "executed in a masterly and workmanlike manner according to the true intent and meaning of this act" for after its completion the company was permitted to erect toll gates and collect toll thereat as contemplated in the statute. The subsequent obligation of the company was to keep the road "in good and perfect order the whole distance aforesaid" and to the extent to which it has made default in this respect it is subject to the order of the Public Service Commission. It was not asserted by the appellant that the road was in good condition in all of its parts and the evidence shows clearly that it was out of repair in several places. The testimony of the president of the motor club which it was admitted would be corroborated by the testimony of several other named witnesses was that in different places on the road it was in bad repair and the president

of the corporation stated in reply to an inquiry of one of the commissioners that after a bill was presented in the legislature for the taking over of the turnpike roads of the Commonwealth owned by private corporations less repairing was done than was done before "and the road did go down." Mr. Grove who preferred the complaint against the company identified a number of places on the road which were rough and which made it unsafe to use an automobile at a greater speed than fifteen miles an hour. There was evidence on the other side that the road was in fairly good condition. It appears to be admitted by the counsel for the appellee that the appellant is only bound to put the road in good condition. It may be that the word "reconstruct" was used by the commission in that sense. There can be no doubt of the duty of the company to so repair its road as to meet the substantial requirements of its charter. We have not found anything in the testimony to show that the road was not built of the requisite width. Presumably the commission quoted the language of the charter in forming the order and therefore named the width of the road to be rebuilt. We are disposed to give to the language of the order the interpretation which we understand the learned counsel for the appellee give to it and to hold that it only requires the appellant to put its road in the good order which its charter and the public service require and the order of the commission as thus construed is affirmed. It may be that this will involve the outlay of a sum greater than the income of the company but this is a question within its exclusive control. Whether the business can be conducted profitably in view of the changed methods of travel and the increased wear and tear of the roadbed is a matter for the consideration of the company alone, but while it continues in the exercise of its franchise it is under obligation to maintain a highway of the character which it contracted to maintain. Subject to the modification herein indicated the order of the Public Service Commission is affirmed.