# Philadelphia & Reading Railway Company, Appellant, *v.* Public Service Commission.

*Railroads—Branch—Installation of passenger service.*

An order of the Public Service Commission directing a railroad company to furnish passenger service on a branch will be sustained where the evidence shows that the branch was a constituent part of the company's railroad built under legislative authority; that it was used for small shipments of freight, and occasionally for excursion trains for passengers; and that the service would not be wholly unremunerative.

Where a railroad is granted by the State a public franchise to engage in passenger, freight and the general business of a railroad company, the rights of a common carrier are thereby conferred. It is the duty of such carrier, who accepts such franchises and engages in business under them, to operate its facilities within its ownership or control in such manner as to meet the reasonable requirements of the communities to be served. The duty of furnishing adequate service for the accommodation of the public follows the continued enjoyment or partial use of such franchises.

Argued March 15, 1917. Appeal, No. 368, Oct. T., 1915, by plaintiff, from order of Public Service Commission, Complaint Docket 182, installing passenger service, in case of Philadelphia & Reading Railway Company v. Public Service Commission of the Commonwealth of Pennsylvania. Before ORLADY, P. J., PORTER, HENDERSON, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Petition to compel the installation of passenger service on a branch railroad.

From the record it appeared that the branch in question was a part of the Mine Hill and Schuylkill Haven Railroad leased to the Philadelphia & Reading Railway Company. The legislative history of the branch is set forth in the opinion of the Superior Court.

The commission reported in part as follows:

Newtown village, located on the Middle Creek Branch,

has a population of about six or seven hundred people, and with the surrounding territory dependent upon it, in Reilly Township, No. 2, about 1,000 inhabitants. The village of Swatara, about a mile from Newtown, would be accommodated by passenger train service to New-town. The people in these villages and contiguous territory are without adequate railroad facilities. The evidence discloses a public need for the service demanded, and it likewise appears that under the charter created by the incorporating acts the respondent is in duty bound to meet that need."

The following order was made:

"Now, to wit, August 13, 1915, It is ordered: That the Philadelphia & Reading Railway Company install, within thirty (30) days of the service of this order, morning and afternoon passenger train service between Newtown, on the Middle Creek Branch, and Swatara Junction, on the Tremont Extension of the Mine Hill and Schuylkill Haven Railroad, with reasonable train connections at Swatara Junction with the passenger trains of said respondent company passing over said Tremont extension."

*Error assigned* was the order of the commission.

*John T. Brady,* for appellant.—The order of the commission appealed from is vague and indefinite in that it does not attempt to specify in what manner the passenger service ordered shall be performed.

There is no legal obligation on the part of the Philadelphia and Reading Railway Company, as lessee of the Mine Hill and Schuylkill Haven Railroad Company, to install passenger service on the Middle Creek branch?

In the absence of a statutory requirement every common carrier has the right to determine what particular line of business he will follow. If he elects to carry freight only, he will be under no obligation to carry passengers and vice versa: Wiggins Ferry Co. v. East

St. Louis Union R. R. Co., 107 Ill. 451; Sherwood v. Atlantic & D. R. R. Co., 26 S. E. Rep. 943.

*Berne H. Evans,* for appellee.—The order of the commission was reasonable: State of Florida ex rel. v. Atlantic Line R. R., 13 L. R. A. N. S. 321; Missouri P. R. R. Co. v. Kansas ex rel., 216 U. S. 261.

OPINION BY KEPHART, J., July 13, 1917:

This is an appeal from the order directing the appellant to furnish passenger service on what is called the Middle Creek branch to and from Newtown. The authority to make the order is not disputed and is contained in Paragraph M, Section 1 of Article II of the Public Service Act. The appellant challenges the order for the reasons, (1) that the portion of the appellant's road over which the service was directed to be made was a leased line upon which passenger service had never been continuously in effect, and freight service, except for intermittent shipments, had entirely ceased; that carriers engaged in freight business could not be required to give passenger service; and (2) the order was unreasonable in that the service was so unremunerative as to be confiscatory of property.

The appellant leased the Mine Hill and Schuylkill Haven Railroad, a corporation chartered by the Act of 1828. Through numerous acts of assembly the company was authorized to do the general business of a common carrier. Finding it desirable to extend its road and being without the necessary capital to build such extensions, the Act of April 7, 1849, P. L. 459, was passed empowering it to extend its road or branches and giving authority to raise capital for that purpose. Under this act this piece of road, upon which this service was ordered in effect was built. The purpose of the act was to bring the extensions there named within all the obligations, rights, privileges and powers as conferred by the Act of 1828, its amendments and supplements, and this

part of the road was as much a part of the Mine Hill
and Schuylkill Haven Railroad as though it had been
built under its original charter.   The Mine Hill and
Schuylkill Haven Railroad developed into a modern
railroad and under the authority contained in the vari-
ous acts of assembly it assumed the full duty of a com-
mon carrier of passengers and property on the greater
part of its line.   As to the part constructed under the
Act of 1849, it did not generally, by schedule, exercise
the function of a common carrier of passengers but oc-
casionally excursion trains carried passengers.   Its
freight business consisted in hauling coal until 1898,
culm until 1913, and small shipments of freight to the
present time.   Newtown is noted on the tariff schedules
of the appellant company.

Where a railroad is granted by the State a public
franchise to engage in passenger, freight and the general
business of a railroad company, the rights of a common
carrier are thereby conferred.   It is the duty of such car-
rier, who accepts such franchises and engages in the busi-
ness under them, to operate its facilities within its own-
ership or control in such manner as to meet the reason-
able requirements of the communities to be served.   The
duty of furnishing adequate service for the accommoda-
tion of the public follows the continued enjoyment or
partial use of such franchises.   This is in compliance
with its contract with the State by which the corporation
was created.   This contract contemplated this service
and it does not matter whether the authority given is
permissive or mandatory, the obligation continues unless
it be shown that such service is so unremunerative as to
be unreasonable: Missouri Pacific Railroad Co. v.
Kansas ex rel., 216 U. S. 261; State of Florida ex
rel. v. Atlantic Coast Line R. R., 13 L. R. A.
N. S. 321; Glen Rock Motor Club v. The Public
Service Commission, 64 Pa. Superior Ct. 147.   We
do not have then, under the facts, the case of a common
carrier engaged exclusively in a freight business being

directed to install passenger service, but of a railroad company engaged generally as a common carrier over the greater portion of its line, and at times recognizing its legal obligation to carry passengers on a part of its road termed a branch line. It then becomes a question as to the reasonableness of the order based upon the productiveness of the business to be derived from such service. Upon a careful review of the evidence we are not satisfied that the commission was in error in making this order. The details of operation and the character of the service to be given were for the commission to determine under the evidence. It was not convinced that the evidence was so clear and positive that the service would be unremunerative, and consequently ordered the service into effect, giving to the appellant the right to apply for a modification of the order if it appeared, after a fair trial, that the expenses exceeded the income to such an extent that the commission could determine that it should be discontinued. The outlay in putting the service into effect was so inconsiderable that it would not, of itself, condemn the order as being unreasonable. The testimony sustains the action of the commission and its order is affirmed.