# New York & Pennsylvania Railway Co., Appellant, v. The Public Service Commission.

*Public service corporations—Surrender of charter—Act of April 9, 1856, P. L. 293—Public Service Company Law.*

The Act of April 9, 1856, P. L. 293, furnishes a full and complete method of procedure for corporations desiring to surrender their charter powers and quit business or dissolve. There is nothing in the Public Service Company Law, giving the Public Service Commission power and authority to regulate corporations, which applies to such surrender or dissolution. The provisions of that act are limited to such corporations as continue to retain their charters and enjoy their franchises and are actually engaged in the service of the public, under their charter rights.

*Public service corporations—Surrender of charter—Jurisdiction, C. P.*

The court of common pleas, wherein the corporation is doing business, has jurisdiction to entertain a petition for dissolution, under the provisions of the Act of April 9, 1856, P. L. 293. A decree of dissolution, made in accordance with such petition, is not contrary to the provisions of the Public Service Company Law.

Where a railroad company ceased to do business and presented its petition to have its charter dissolved, which was granted by the court of common pleas and a decree entered, it is not necessary also to obtain the consent of the Public Service Commission before ceasing to exercise its charter rights.

Argued May 5, 1919. Appeal, No. 127, Oct. T., 1919, by New York & Pennsylvania Railway Company from order of The Public Service Commission, C. 2694, in case of New York Central Railway Company v. The Public Service Commission of the Commonwealth of Pennsylvania, on appeal, and Oswayo Chemical Company and Empire Glass Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, WILLIAMS and KELLER, JJ. Reversed.

Complaint to the Public Service Commission that the New York & Pennsylvania Railway Company was about

to discontinue the operation of its railway and petition for an order directing respondent to continue rendering public service.

The facts appear in the opinion of the Superior Court.

The commission made the following order:

[This matter being before the Public Service Commission of the Commonwealth of Pennsylvania upon complaint and answer on file, and having been duly heard and submitted by the parties, and full investigation of the matters and things involved having been had, and the commission having, on the date hereof, made and filed of record a report containing its findings of fact and conclusions thereon, which said report is hereby approved and made a part hereof.

[Now, to wit, March 11, 1919, the New York and Pennsylvania Railway Company is ordered and directed to continue rendering its public service until such time as it shall have applied to and obtained from this commission permission to abandon that service, the tariffs in effect prior to February 28, 1919, to be effective until legally changed.]  [2]

*Error assigned,* among others, was the order of the commission.

*Archibald F. Jones,* and with him *R. R. Lewis,* for appellant.—The court of common pleas of the proper county has sole jurisdiction to permit a public service corporation to surrender its charter powers: Act of April 9, 1856, Sec. 1, P. L. 293; Pur. Digest, 13th Ed., 818; Com. v. Slifer, 53 Pa. 71; Glen Rock Motor Club v. Turnpike Co., 64 Pa. Superior Ct. 147; Phila. & Reading Ry. Co. v. Public Ser. Com., 67 Pa. Superior Ct., 604; Brandt v. East Berlin E. Co., 1 Pa. Pub. Serv. 255.

It was not necessary to secure the approval of the Public Service Commission to the proposed abandonment before the decree of the court became effective: In

re Twenty-eighth St., 102 Pa. 140; Com. v. Balph, 111 Pa. 365; Overseers v. Smith, 2 S. & R. 363.

The Public Service Commission has no power to prevent a corporation, which has surrendered its chartered powers, from ceasing to do business.

*Ralph J. Baker,* and with him *Fred D. Gallup* and *W. K. Swetland,* for intervening appellee.—A public service corporation desiring to discontinue its business must obtain the consent of the Public Service Commission: New Brighton Borough v. New Brighton Water Co., 247 Pa. 232; Philadelphia & Reading Ry. Co. v. Public Service Commission, 67 Pa. Superior Ct. 604; Nyce v. Delaware Valley R. R. Co., C. No. 2545, 5 Dept. Rep. 225; Pacific Electric Ry. Co., P. U. R., 1915 C. 784; Loyalton Electric Light Co., P. U. R. 1915 C. 804; Central California Traction Co., P. U. R. 1915 F. 424; Napa Valley Electric Co., P. U. R. 1918 A. 539; City of Pana v. Central Illinois Public Company, P. U. R. 1916 B. 177; Rockland, etc., R. Co., P. U. R. 1918 E. 877; State ex rel. Caster v. Flannelly (Kan. 1916), 154 Pac. 235; P. U. R. 1916 C. 56; State ex rel. v. Southwestern Bell Telephone Co. (Kans. 1918), 170 Pac. 26; P. U. R. 1918 B. 676.

The determination of whether the abandonment of service by a railroad will be without prejudice to the public welfare is for the commission in the first instance: York Water Co. v. York, 250 Pa. 115; Leiper v. B. & O. R. Co., 262 Pa. 328; Bellevue Borough v. Ohio Valley Water Co., 245 Pa. 114; Pittsburgh Railways Co. v. Pittsburgh, 260 Pa. 424; St. Clair Borough v. Tamaqua & Pottsville Elec. Ry. Co., 259 Pa. 462.

OPINION BY KELLER, J., July 17, 1919:

The appellant is a corporation formed by the merger and consolidation of a Pennsylvania corporation with two New York corporations, and owns and operates a

steam railroad from a point in one state to a point in the other.

The intervening appellee is a corporation of this State, having a plant located along the line of the appellant's railroad in Pennsylvania.

On February 17, 1919, the intervening appellee made complaint to the Public Service Commission of this Commonwealth that the appellant was about to discontinue the operation of its railroad, and prayed that an order be issued directing it to continue rendering service to the public.

The appellant answered and admitted that it was about to discontinue operations, but averred that it purposed doing so under authority of a decree of the Court of Common Pleas of Potter County, duly entered in proceedings had under the Act of April 9, 1856, P. L. 293, granting it permission to surrender any and all powers to operate a railroad as contained in its charter.

The order of the Public Service Commission was that the appellant continue rendering its public service until such time as it shall have applied to and obtained from the commission permission to abandon such service.

The question for our consideration, therefore, is: Has the court of common pleas of the proper county jurisdiction to permit a public service corporation to surrender its chartered powers, or must a certificate of the Public Service Commission, that such decree may be entered without prejudice to the public welfare, first be obtained?

The authorities cited by the able counsel for the intervening appellee, to the effect that the consent of the State must be obtained before a public service corporation may withdraw from serving the public and cease operations, are not in point here; the appellant admits the necessity of such consent. Whatever may be the rule in other states, in Pennsylvania, since 1856, at least, the consent of the Commonwealth, evidenced by a decree of the court of common pleas of the proper county, entered in accordance with the provisions of the Act of April 9, 1856, is

necessary before a corporation can surrender its chartered powers or be dissolved; and such a decree the appellant has obtained.   But the appellees further contend that the Act of 1856 is so far repealed or modified by the Public Service Company Law (Act of July 26, 1913, P. L. 1374) as to require the commission first to determine whether a decree in accordance with said act may be entered without prejudice to the public welfare, before the court of common pleas can take action in the matter. It is admitted that there is no express repeal or modification of the Act of 1856, but it is urged that such power is impliedly lodged in the commission from the fact that the Public Service Company Law makes it the duty of a public service corporation to furnish and maintain its service in conformity with such reasonable orders or regulations as may be made by the commission.

The decisions of the Supreme Court of this State, cited by the appellees, sustain no such contention.   The rulings in all of them were based on the fact that the power of the Public Service Commission to act in the premises was expressly (not impliedly) committed to the commission by the Public Service Company Law.   The fixing of rates, their reasonableness, etc., the adequacy of service, the prevention of discrimination, and kindred matters, are specifically entrusted to the commission, and the law expressly requires the approval of the commission to the acquisition by a municipality of the plant of a water company [Art. III, Sec. 3 (d)].   But while the act expressly requires the consent of the Public Service Commission to the incorporation of public service companies and gives it power and authority to supervise and regulate all such companies "doing business within this Commonwealth" [Art. V, Sec. 1], it is absolutely silent on the subject of the dissolution of such corporations.   Considering the care with which the act was drawn and the particularity with which the powers of the commission are enumerated, such an important matter would scarcely have been overlooked if any action by the commission

had been contemplated with respect to it. The reasonable explanation is that it was omitted because it had already been fully and satisfactorily committed to the court of common pleas and no satisfactory reason was apparent for interfering with the exercise of that authority. The jurisdiction attaching to a court will not be diminished by implication in order that the powers of an administrative commission may be enlarged.

The industry of counsel for the intervening appellee has furnished us an abundance of decisions of the courts and public utilities commissions of other states, to the effect that such commissions have the power to regulate the extent of the service and operation of a public utilities company and may order it to refrain from abandoning such service in part or even wholly. But in none of them does it appear that the corporation was desirous of surrendering the powers granted it in its charter, or that any other jurisdiction had been authorized by law to pass upon the propriety of the surrender of such powers or the dissolution of such corporation. On the other hand, similar commissions in other states have denied their jurisdiction to pass upon the absolute and entire withdrawal from operation of such corporations and ruled that their regulatory powers applied only so long as such companies continued to operate and serve the public: Re Lake Erie B. G. & N. R. Co., P. U. R. 1916, F. 553 (Ohio) ; In re Lima-Honeoye E. L. & R. Co., P. U. R. 1915, C. 871 (N. Y.). The decisions of this court cited by the appellees point the same way. In Glen Rock Motor Club v. York & M. L. Turnpike Co., 64 Pa. Superior Ct. 147, Judge HENDERSON said: "But while it continues in the exercise of its franchise, it is under obligation to maintain a highway of the character which it contracted to maintain" p. 154; and in P. & R. Ry. Co. v. Public Service Commission, 67 Pa. Superior Ct. 604, Judge KEPHART said: "The duty of furnishing adequate service for the accommodation of the public follows the continued enjoyment or partial use of such franchises." The irresistible conclusion is

that if the corporation gives up its franchise and surrenders the powers given it by its charter, in the manner prescribed by law, the duty and obligation of furnishing the public service is terminated and the regulatory power of the Public Service Commission over it is at an end. The same thought was expressed by the Supreme Court of the United States in Mo. Pac. R. R. Co. v. Kansas, 216 U. S. 262: "But where a duty which a corporation is obliged to render is a necessary consequence of the acceptance and continued enjoyment of its corporate rights, those rights not having been surrendered by the corporation, other considerations are in the nature of things paramount, since it cannot be said that an order compelling the performance of such duty at a pecuniary loss is unreasonable......It may not be doubted that the road, by virtue of the charter under which the branch was built, was obliged to carry passengers and freight, and, therefore, as long as it enjoyed its charter rights, was under the inherent obligation to afford a service for the carrying of passengers." And by the Supreme Court of Colorado, in Colo. & Southern Ry. Co. v. State R. R. Com. of Colo., 129 Pac. 506: "A railroad company which has not surrendered but continues to enjoy its franchise and corporate rights may be required by the railroad commission to resume operation of an abandoned portion of its line and furnish such service thereover as is sufficient to accommodate the traffic, although such operation will result in a loss."

The term, "power," as used in the Act of 1856, in connection with the words, "contained in its charter," does not mean a mere privilege or immunity; it refers to the franchise to do the particular thing or things granted the corporation in its charter: Words and Phrases, vol. 2, p. 1606; Thomas v. R. R. Co., 101 U. S. 82. The power contained in the charter of the appellant was to operate a steam railroad in Pennsylvania under the provisions of the General Railroad Act. When it surrendered that power, it gave up its franchise to operate a railroad.

The appellees seem to have confused the term, power, with the extent of service or operation under such power. The curtailment of service, the withdrawal of trains, the failure to supply equipment, the cutting off of switches and branches, so long as the corporation retains its power to operate a railroad, are matters relating to the extent of service or operation, and are within the regulatory power of the commission. But the surrender of a chartered power is not a regulatory matter. It is the absolute relinquishment of the corporate franchise to the extent of the power surrendered, and, if the franchise is to do but one thing, is equivalent to a dissolution. The Public Service Commission has the same regulatory and supervisory power over persons engaged for profit in the same kind of business as the corporations mentioned in section one of the Public Service Company Law, yet it would scarcely be contended that the commission could compel the continuance of such a business if the person who conducted it chose to withdraw therefrom altogether or died.

We are of opinion that the Act of 1856 furnishes a full and complete method of procedure for corporations desiring to surrender their charter powers and quit business or dissolve, and that there is nothing in the Public Service Company Law, giving the commission power and authority to regulate corporations, which applies to such surrender or dissolution; that the provisions of the act are limited to such corporations as continue to retain their powers and enjoy their franchises, in other words, to living corporations, or in the words of the act to those "doing business"; that while it is in the power of the legislature to take from the court of common pleas the duty of determining whether the dissolution of a corporation or the surrender of its chartered powers may be prejudicial to the public welfare, and commit it to the Public Service Commission, it has not, as yet, seen fit to do so.

It is not contended that the provisions of the Act of 1856 were not strictly complied with. The intervening

523, (1919).]        Opinion of the Court.

appellee appeared at the hearing held in pursuance thereof and took no appeal from the decree entered in such proceedings.

The proceedings in the Court of Common Pleas of Potter County were not in opposition to, or contumacy of, the order of the Public Service Commission on the previous complaint of S. H. Gross, but rather in conformity with it. The order in that case was that the appellant should continue the rendering of the public service in which it was engaged "until such time as it shall be lawfully authorized to abandon the same." That is precisely what the appellant did. It proceeded in the proper forum, under the proper statute, "to surrender any and all powers to operate a railroad contained in its charter," and that carried with it the abandonment of its service.

The assignments of error are sustained and the order of the Public Service Commission is reversed.