# Lehigh Valley Transit Company, Appellant, *v.* The Public Service Commission.

*Public Service Company Law—Street railway companies—Voluntary joint freight service—Public Service Commission—Jurisdiction to regulate and apportion rates.*

A street railway company, which for ten years has been engaged with another railway in the joint transportation of light freight, is subject to the jurisdiction of the Public Service Commission in regard to the regulation and apportionment of the joint rates charged by the two companies for such service.

The exception contained in article V, section 7, of the Public Service Company Law of 1913, does not apply to companies which have voluntarily engaged in the business of the joint transportation of freight. That section relates wholly to the compulsory connection and interchange of service, and has nothing to do with through service voluntarily established.

While a company might not be compelled to perform a certain service, where it voluntarily undertakes it, it renders itself subject to the jurisdiction of the Public Service Commission and may be required to perform the service adequately, fairly and reasonably, without preference or discrimination.

Argued October 8, 1921.    Appeal, No. 99, Oct. T., 1921, by plaintiff, from the order of the Public Service Commission of the Commonwealth of Pennsylvania in the case of Lehigh Valley Transit Company v. The Public Service Commission of the Commonwealth of Pennsylvania on appeal, and Philadelphia Rapid Transit Company, intervening appellee.   Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ.   Reversed.

106 LEHIGH VALLEY TRANSIT CO. *v.* PUB. SER. COM.

Statement of Facts—Opinion of the Court. [78 Pa. Superior Ct.

Complaint before the Public Service Commission that the joint rates collected for joint freight service by complainant and respondent, Philadelphia Rapid Transit Company were not fairly and justly divided.

The facts are stated in the opinion of the Superior Court.

The commission dismissed the complaint. Complainant appealed.

*Error assigned,* among others, was the order of the commission.

*Reuben J. Butz,* of *Butz & Rupp,* and with him *Thomas J. Perkins,* for appellant.

*Frederic L. Ballard,* and with him *C. J. Joyce* and *Ballard, Spahr, Andrews and Maderia,* for Philadelphia Rapid Transit Company, intervening appellee.

*Frank M. Hunter,* Counsel, and with him *John Fox Weiss,* Assistant Counsel, for the Public Service Commission.

OPINION BY KELLER, J., December 15, 1921:

The appellant (hereinafter called Lehigh Company), operates a street passenger railway from Chestnut Hill, by way of Norristown, to Allentown and from there to Bethlehem, Nazareth, Emaus, Macungie, Schnecksville, Slatington and other points in the Lehigh Valley. The intervening appellee, (hereinafter called Philadelphia Company), operates a street passenger railway in the City of Philadelphia and vicinity, with lines, inter alia, extending from Front and Market streets, Philadelphia, to Chestnut Hill. In connection with their passenger service both companies transport and carry farm produce, garden truck, milk, merchandise, and other light freight over their lines, or certain of them, Philadelphia Company having a main freight station at

Front and Market streets, aforesaid, and carrying freight, over five lines or routes aggregating sixty miles in length, to Chestnut Hill, 63d and Market streets, Doylestown, Media and Fox Chase, at which points and intermediate places it maintains stations for the reception and delivery of such light freight. It has a general freight agent, employs fifty men exclusively in such freight service, operates sixteen freight cars, and received as freight revenues in 1919 over $175,000. Since 1910 it has had an agreement with Lehigh Company, under which, by interchange at Chestnut Hill, such freight is carried from points on the lines of one company to points on the lines of the other company, under a joint rate or tariff, lower than the sum of the local rates on both lines; and since the Public Service Company Law became effective tariffs covering the joint service thus rendered by the two companies have been duly published and filed with the commission by both companies, or by Philadelphia Company and concurred in by Lehigh Company.

On or about September 29, 1920, Lehigh Company filed its complaint with the Public Service Commission alleging that the joint rates thus collected for the joint freight service performed by the two companies was not being fairly and justly divided; that Philadelphia Company, though performing less than twenty-five per cent of the service for which such rate was charged insisted upon receiving forty-seven per cent of the revenues derived therefrom and that the parties were unable to agree upon a division of said joint rates; and praying that the commission make an order fixing the proportion of rates covering the joint service to which the respective parties should be entitled and granting an order of reparation for the amounts unjustly and unreasonably demanded and received by Philadelphia Company on account of such joint freight rates for the period of two years prior to the filing of said complaint.

Philadelphia Company filed an answer averring that it was not engaged generally in the business of transporting freight and did not generally solicit the transportation of freight as a main branch of its business and denying the authority of the Commission to make any such order by reason of the exception contained in the concluding paragraph of article V, section 7 of the Public Service Company Law. The commission sustained the position of Philadelphia Company and dismissed the complaint on the ground that said exception in the act deprived it of authority to make any order in the premises.

We have carefully considered the order of the commission and are of the opinion that it is based upon an erroneous construction of the Public Service Company Law and must be reversed.

The exception relied upon to sustain the order of the commission is as follows: "Nothing in this section shall give the commission power over street railway corporations engaged in the business of carrying passengers, but not engaged in the general business of transporting freight and which do not generally solicit the transportation of freight as a main branch of their business."

The exception must be limited to the powers granted by the section of which it forms a part (section 7, of article V); it cannot be held to restrict the general powers of the commission as set forth in the act and especially in the fifth article, which enumerates the powers and duties of the commission, or apply to any other sections in that article. Now section 7, of article V grants to the commission power to *require* i. e. *compel* railroad corporations and street railway corporations to construct and maintain such switch or other connections with or between companies of the same character, as are reasonably practicable and as the commission shall deem necessary and proper, for the service, accommodation and convenience of the public; and to establish through routes and joint rates and classifications

for the conveyance of persons and property between two or more points within this Commonwealth, *whenever the railroad corporations concerned shall have refused or neglected voluntarily to establish such through routes and joint rates,* and to prescribe the just terms and conditions under which said through routes shall be operated; and to prescribe and fix the equitable and just apportionment and division of the cost of construction, maintenance and operation of the connections, interchange of service, or any joint rates thus provided for, in case the said corporations fail to agree among themselves. The section relates wholly to compulsory connections and interchange of service; it has nothing to do with through service voluntarily established. It covers cases where one railway corporation is desirous of establishing a through connection or interchange of service with another corporation of the same character and the other corporation refuses to join in establishing such through service. In such circumstances the commission can compel the resisting corporation—if the convenience of the public requires it—to make such connections or interchange of service as may be reasonably practicable and necessary for the service and accommodation of the public, except that it cannot require a through freight connection or interchange of freight service if the reluctant corporation is not engaged in the general business of transporting freight and does not generally solicit the transportation of freight as a main branch of its business; in other words, the commission cannot compel a through freight connection or interchange of freight service which will require a street railway corporation to take up a service in which it is not already engaged generally or as a main branch of its business. It is the corollary of article II, section 1, which prescribes the duties of public service companies (as distinguished from their rights or privileges), and provides in paragraph (s) that it shall be the duty of every railroad corporation or street railway corporation "to

construct and maintain, *whenever the commission may require the same* such switch or other connections with or between the lines of other companies of the same character, where the same is reasonably practical [sic] and can readily be connected, to form a continuous line of transportation and to cause the conveyance of persons and property between points within this Commonwealth to be without unreasonable interruption or delay; and to establish through routes and service therein and just and reasonable joint rates, fares and charges applicable thereto; and where practicable, transport freight over the same without transfer from the originating cars; and shall not discriminate in the said rates, fares, charges, or in any rules or regulations applicable thereto, between any such connecting lines"; and then comes almost the exact words of the exception in article V, section 7: "Provided, That this section shall not apply to a street railway corporation engaged in the business of carrying passengers, but not engaged in the general business of transporting freight, and which does not generally solicit the transportation of freight as a main branch of its business." Here again no duty is imposed on any street railway corporation, the performance of which the commission may require, to engage in through freight service, in connection or interchange with another corporation of the same character, when it has not already voluntarily made such freight connection or arranged for such interchange of freight business and is not generally engaged in freight business.

Neither of the sections has any reference to a corporation which, though it might not be compelled to engage in such through freight service and joint interchange of freight business, is actually and voluntarily doing this very thing. When it assumes to perform this public service, it is subject in this respect, no less than any other public service company, to the regulation of the Public Service Commission, and may be compelled

to perform it adequately, fairly, reasonably and without preference or discrimination.

Article V, section 1 of the Public Service Company Law gives the commission general administrative power and authority as therein provided to supervise and regulate all public service companies doing business within this Commonwealth, and it is specifically provided that such power and authority shall include the power to inquire into and regulate the service, rates, fares, tolls or charges of any and all public service companies, including individual and joint rates. Article II, section 1 (e) provides for the filing of schedules of joint rates wherever any public service company jointly acts, participates or connects with any other public service company in the performance of public service, which rates must be just and reasonable and not more in the aggregate nor in the apportionment thereof than may be prescribed by order of the commission. The word, "service," is used in the act "in its broadest and most inclusive sense and includes any and all acts done, rendered or performed......by public service companies in the performance of their duties to their patrons, employees and the public, as well as the interchange of facilities between two or more public service companies": Article I, section 1. There can be no question that in the transportation of light freight Philadelphia Company is doing business. It matters not whether the power and authority to do this business is obligatory as a part of its chartered powers, or is merely permissive and voluntary. As long as it is doing business it is subject to the supervision and regulation of the Public Service Commission as provided in the Public Service Company Act. Whether it can be compelled to act as a common carrier of freight or not, if under the authority of law it actually engages in the transportation of light freight, it is certainly doing business and rendering public service in that respect and is subject to the regulation and supervision of the commission provided in the act. We have no

doubt that it is to the extent that it engages in the transportation of light freight, a common carrier of such freight. "Any one who holds himself out to the public as ready to undertake for hire or reward the transportation of goods from place to place and so invites the custom of the public is, in the estimation of the law, a common carrier": Lloyd v. Haugh, 223 Pa. 148. But regardless of this point it is a public service company doing business and performing public service in the transportation of light freight and while doing so is subject to the regulation and supervision of the commission in that respect, as well as the others as provided by the act, and this is the case whether the authority under which it acts is mandatory or merely permissive: P. & R. R. Co. v. P. S. C., 67 Pa. Superior Ct. 604, p. 607; Terminal Taxicab Co. v. Kutz, 241 U. S. 252.

Philadelphia Company contends that it is not subject to the regulatory power of the commission because its authority to carry light freight, etc., is based on the Act of April 22, 1907, P. L. 96, and not on the Act of June 1, 1907, P. L. 368. The former act authorizes street railway companies to carry certain kinds of light freight; the latter confers on such companies the power of eminent domain subject to the condition that they become common carriers of express matter and light freight. A third act, that of May 6, 1909, P. L. 457, authorizes street railway companies to carry all kinds of freight and property provided the consent of the municipal authorities has first been obtained, which was lacking in this instance. The distinction would be valid were this a case of an attempt on the part of Lehigh Company to compel Philadelphia Company to engage in the business of carrying light freight and produce. Under such circumstances Philadelphia Company not doing business in respect to the transportation of light freight could not be required to furnish through connections or an interchange of freight service with Lehigh Company because of the exception contained in section 7 of article V

of the Public Service Company Law, but that exception cannot be held to apply to a company which, under its permissive authority, is already engaged in the carrying of light freight and actually doing business within the Commonwealth in that respect. For if it were otherwise we should have a public service company doing business within the Commonwealth with respect to a subject authorized by act of assembly and yet not subject to the regulatory or supervisory powers of the commission. Following this to its logical conclusion, such a company would not be required with respect to the transportation of light freight to file schedules of rates; it could discriminate between customers in the transportation of such goods and in the rates to be charged them respectively. It is unthinkable that the legislature could have had such a result in view; it is contrary to the express provisions of the act, and that it was not so contemplated was recognized by Philadelphia Company itself, in filing schedules of joint freight rates and posting and publishing them as required by the act. The force of the exception contained in article V, section 7, must be limited to the subject embraced therein, namely, the ordering of compulsory through connections or compulsory interchange of service. The legislature very properly considered that it was neither fair nor reasonable to require a street railway company which had the power to engage in the carrying of freight but was not actually doing business in that respect to establish through freight connections and interchange of freight service, and therefore exempted such company from the supervision and regulation of the Public Service Commission with respect to compulsory interchange of such service, but there was no reason why such exemption should apply to a public service company actually doing business in the way of transporting freight and produce and actually making through connections and interchange of service with another company. To hold that such a company was not subject to the regulation and

supervision of the Public Service Commission as to the rates to be charged therefor would be to nullify the very purpose and provisions of the act. Section 10 of article V exactly covers such a case. It applies to all public service companies of every character which have arranged for an interchange of service and joint rates therefor, but are unable to agree as to the proper division or distribution of such rate. It is as follows: "Where the public service companies entitled to share in any joint rate or charge shall be unable to agree upon the division thereof, or shall make any unjust, unreasonable, or unduly discriminatory or preferential division or apportionment thereof, the commission may, after hearing, upon its own motion or upon complaint, fix the proportion to which every such public service company shall be entitled." It contains no exception of any character because it does not seek to compel any company to engage in a line of business in which it is not actually doing business. It only regulates the apportionment of the rates charged for a through service already established. Considering the circumstances of this case, that Philadelphia Company has for ten years been engaged in the transportation of light freight under the authority given it by the laws of this Commonwealth; that in the doing of such business it years ago established through connections and interchange of service with Lehigh Company; that it has published and posted and filed with the commission schedules covering the joint rates to be charged for such through connection and interchange of service, we are of opinion that such through service and the rates to be charged therefor are subject to the regulation and supervision of the Public Service Commission, and that the commission has authority to determine the fair, just and reasonable division or distribution of such rates or charges between the several companies interested (article II, section 1, (e); article V, sections 1, 3 and 10). The fact that the legislature of Pennsylvania by Act of March 23, 1921, No. 22, has eliminated the

exception from article V, section 7, is not opposed to this view. It only withdraws the exception formerly existing as to the compulsory ordering of such interchange of freight service and does not establish that the legislature originally intended that it should apply to cases where the joint interchange of service had been voluntarily established.

With this view of the case it is unnecessary to devote any time to the other questions raised. It would seem, however, that a business for the carrying on of which depots have been built, sixteen freight cars acquired, and in which a force of fifty employees, headed by a general agent, is engaged, with a total annual revenue of $175,-000, is large enough to be termed a main branch, though not the main branch of such a company's business, irrespective of the total number of cars or employees, the gross volume of its business, etc.; that a business of the size and character which we have just mentioned is more than a mere desultory or incidental branch of its business and sufficient to take it out of the exception before referred to. However, we need not pursue that matter further.

The order of the Public Service Commission is reversed and the record is remitted to the Public Service Commission for such further proceedings, not inconsistent with this opinion, as right and justice may require. The costs on this appeal to be paid by the intervening appellee.