# Philadelphia & West Chester Traction Company, Appellant, *v.* The Public Service Commission.

*Public Service Company Law—Street railway companies—Voluntary carriage of light freight—Right to discontinue—Jurisdiction of Public Service Commission.*

A street railway company, which, for a period of over ten years has voluntarily engaged in the transportation of light freight and merchandise under authority of the Act of April 22, 1907, P. L. 96, cannot discontinue such service while continuing to exercise its franchise and other privileges without the consent of the Public Service Commission.

The express and light freight operations are a part of the corporate business which the street railway company has conducted by the authority of statute for a considerable period of time. It has been permitted to transport light freight and express over its tracks laid in the public highways and it has accepted this special privilege and enjoyed this special public power for years, and is therefore subject to corresponding special and public duties, among which is the submission to the regulatory supervision of the State as respects such right and privilege so far as may be necessary to safeguard the public welfare.

Argued October 13, 1922. Appeal, No. 189, Oct. T., 1922, by plaintiff, from order of the Public Service Commission of the Commonwealth of Pennsylvania, Complaint Docket No. 4124, in the case of Philadelphia & West Chester Traction Company v. Philadelphia Rapid Transit Company. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Complaint before the Public Service Commission against the proposed discontinuance by the Philadelphia Rapid Transit Company of freight over its trolley lines.

The facts are stated in the opinion of the Superior Court.

The respondent contended that the commission had no jurisdiction to entertain a complaint against the proposed discontinuance and moved to dismiss the proceedings on that ground. This motion the Public Service Commission sustained. Complainant appealed.

*Error assigned,* among others, was the order of the commission.

*Thos. Raeburn White,* and with him *Parker S. Williams,* for appellant.—The street railway company having engaged in the transportation of freight for over ten years could not discontinue such service without the consent of the Public Service Commission: Lucking v. Detroit & Cleveland Navigation Co., 273 Fed. Rep. 577; Missouri Pacific Ry. Co. v. Kansas, 216 U. S. 262; Northern Pacific Ry. Co. v. State of North Dakota, 236 U. S. 585; Philadelphia & Reading Ry. Co. v. Public Service Commission, 67 Pa. Superior Ct. 604; Keys v. Uniontown Radial Street Ry., 236 Pa. 611.

*Frederic L. Ballard,* attorney for Philadelphia Rapid Transit Company, intervening appellee.—The duty to continue unwillingly in a public service exists only where an abandonment of that service would constitute

355, (1923).]   Arguments—Opinion of the Court.

a breach of the contract with the State arising from the granting and acceptance of special powers and franchises: Missouri Pacific Ry. Co. v. Kansas, 216 U. S. 262; Northern Pacific Ry. Co. v. North Dakota, 236 U. S. 585; Chesapeake & Ohio Ry. Co. v. Public Service Commission of the State of West Virginia, 242 U. S. 603; Northern P. R. R. Co. v. North Dakota, 236 U. S. 585.

*Frank M. Hunter,* counsel, and with him *John Fox Weiss,* assistant counsel, the Public Service Commission.

OPINION BY KELLER, J., March 2, 1923:

We decided in Lehigh Valley Transit Co. v. P. S. C., 78 Pa. Superior Ct. 105, that the Philadelphia Rapid Transit Company, the intervening appellee, a traction motor company, operating a system of street passenger railways, was subject to the supervision and regulation of the Public Service Commission as to the rates to be charged with respect to operations voluntarily engaged in by authority of law, but not required as a part of its charter obligations. We are now called upon to decide whether the commission has jurisdiction over the service rendered under such operations so that its consent or approval must be obtained before the company, while retaining all its charter powers, may discontinue the service thus voluntarily established and carried on for many years.

Since 1910 the transit company has carried light freight and express over its lines, or certain of them, in connection with the operation of its street railway system. It did this by virtue of the provisions of the Act of April 22, 1907, P. L. 96, which conferred on street railway companies and the lessees and operators thereof, the right and privilege to do an express business and transport light freight and produce. It never availed itself of the right of eminent domain conferred by the Act of June 1, 1907, P. L. 368, which provides that all

street railway companies doing so shall be common carriers of express matter, farm produce and other light freight; nor did it avail itself of the provisions of the Act of May 6, 1909, P. L. 457, and secure the consent of the local authorities through which it passed to its transportation of all kinds of freight over and upon its railway. Its powers under the Act of April 22, 1907, however, are not inferior to those conferred by the Act of 1909, except that they are limited to light freight and express; nor different from those prescribed by the Act of June 1, 1907, except that they were voluntarily undertaken.

In this way it built up a considerable light freight and express business, and in conjunction with certain suburban street railway lines, delivered freight originating in Philadelphia, and consisting chiefly of food products and light merchandise, to many suburban points on the way to West Chester, Easton, Reading, Allentown and Bethlehem, some of which were not reached by steam railroad lines. This service was quick and cheap and was of great convenience to shippers in Philadelphia and merchants and dealers in the suburban towns reached by it. The volume of the transit company's freight operations was mentioned with some detail in the former case (78 Pa. Superior Ct. 105, 107), and need not be repeated here. It is enough to say that there can be no question that the service has been of great convenience and advantage to the public.

The transit company decided to discontinue this express and light freight business and the Public Service Commission holds that it is without jurisdiction to compel the company to continue therein or to inquire into its right to discontinue the service at its pleasure; that the transit company, having assumed the service voluntarily, may quit it whenever it likes irrespective of the public convenience. We cannot accede to this proposition.

While it is conceded that the transit company never availed itself of the eminent domain provisions of the Act of June 1, 1907, thereby becoming, perforce, a common carrier of light freight and express matter, it did nevertheless voluntarily exercise the privilege of carrying light freight and express granted to all companies operating street railways by the earlier Act of April 22, 1907, and to the extent that it engaged in that business it thereby became a common carrier of such freight and was subjected to the supervision and regulation of the Public Service Commission with respect thereto: Lehigh Valley Transit Co. v. P. S. C., supra, p. 111, 112. The right and privilege, granted to street railway companies by the Act of April 22, 1907, of transporting light freight over the public highways of the Commonwealth, by means of tracks and facilities originally intended and set apart for the carriage of passengers, was not a new and distinct power conferred upon such companies apart from and without reference to their business of carrying passengers but "is to be considered as incidental to the general purpose of their incorporation": Keys v. Uniontown St. Ry. Co., 236 Pa. 611, 617. A street railway company could not by proceedings under the Act of April 9, 1856, P. L. 293, surrender its franchise to operate a street passenger railway and retain the right or privilege to do an express business and transport light freight over its lines, conferred upon it by the Act of April 22, 1907; the incidental right would fall with the surrender of the general power. Nor, we take it, could such a company, by proceedings under the Act of 1856, surrender the right to carry light freight granted by Act of April 22, 1907, while retaining its franchise to operate a street passenger railway, for it is not such a separate and distinct corporate power as is contemplated by the Act of 1856, but only an incidental right possessed by such companies by virtue of their charter to operate a street railway. They may, or they may not, avail themselves of the privilege conferred, but if they do, it becomes a

part of the operations carried on under their charters and as long as they continue in the enjoyment of the franchises granted by such charters, they are subject with respect to all their intrastate operations to the supervision and regulation of the Public Service Commission, and may be compelled to furnish and maintain,— that is, continue to furnish—reasonable and adequate service and facilities for the accommodation of the public. As was said by Judge KEPHART in Philadelphia & Reading Ry. Co. v. P. S. C., 67 Pa. Superior Ct. 604, 607: "It does not matter whether the authority given is permissive or mandatory, the obligation continues unless it be shown that such service is so unremunerative as to be unreasonable." And the Public Service Commission is the authority to pass upon the reasonableness or unreasonableness of the obligation thus resting upon it, (Phila. & Reading Ry. Co. v. P. S. C., supra), short of a surrender of its corporate powers and franchises, in which event the decision of the question whether the corporate franchise may be surrendered without prejudice to the public welfare is still committed to the court of common pleas: N. Y. & Pa. Ry. Co. v. P. S. C., 72 Pa. Superior Ct. 523. When a public service corporation has once accepted the franchises conferred by its charter and has exercised the powers and privileges secured or authorized to it by law, it is subject to the authority of the State with respect to all its intrastate acts and operations, in so far as the public welfare may be affected. Within this sphere, there is no "No Man's Land" to which the authority of the State does not extend, to protect the public welfare. The regulation and supervision of its rates, facilities and service, in the broadest possible sense, is committed to the Public Service Commission, by the Public Service Company Law; the surrender of its corporate powers and its dissolution is to be passed upon by the court of common pleas, in accordance with the Act of April 9, 1856, P. L. 293. The criterion of judgment in both instances is the public wel-

fare; in neither is it left to the arbitrary will or pleasure of the corporation.

The transit company has not attempted to surrender any of its charter powers, by proceedings under the Act of 1856. It retains every power, right or privilege which it possessed by virtue of its charter or the laws of the Commonwealth. It still has the right and privilege to carry express and transport light freight as incidental to its passenger business. Under the theory of the commission, it may cease this branch of its business to-day, and begin it to-morrow, cease the next day and begin again when it pleases, without supervision or regulation of the commission, and without regard to the public welfare. We do not so understand the law. The express and light freight operations are a part of its corporate business, which by authority of statute it has carried on since 1910. During all that time it has used the streets and highways of the Commonwealth, burdened with the servitude of its tracks and equipment, in and about its express business as well as in its passenger traffic. It has enjoyed the easement in the highways conferred upon it by law in the conduct of its freight operations and thereby subjected them no less than its passenger operations to the supervision and regulation of the commission. It is not the exercise of the right of eminent domain which brings a public service company under the supervision and regulation of the commission; it is the public nature of the business by it carried on and the interest which the public has in its operation, which subjects the company, as to its state business, to state regulation either directly by legislative authority or by administrative bodies endowed with power to that end: Mo. Pac. R. R. Co. v. Kansas, 216 U. S. 262, 275, 54 L. Ed. 472, 478. This applies to its operations carried on by permissive authority of law no less than those which it is obliged to conduct upon accepting its charter. As to the former, the law says, You do not have to undertake these operations unless you want to; they are per-

missive, not mandatory; but if you do begin them, if you exercise the privilege, you are subject to the regulation of the State just the same as if they had been committed to you in your charter. The exercise of the privilege carries with it a corresponding duty, which is subject to the regulation of the State.

The authorities cited by the commission in support of its ruling are easily distinguishable from this case. In Lucking v. Detroit & Cleveland Navigation Co., 273 Fed. 577, a navigation company, holding no public franchise of any kind, had for a number of years operated steamers between Toledo and Detroit, and thence to certain points on Lake Huron, as one of its regular routes. It decided to discontinue and abandon this line. The court dismissed a bill in equity filed to compel the resumption of this traffic and said, inter alia: "No authority, however, has been called to my attention and I have discovered none, to the effect that a common carrier, such as the defendant here, not enjoying any public franchises or exercising any public powers or privileges, is bound after commencing to operate vessels over a certain route, to continue such operation if it finds it desirable to discontinue and abandon the same. It is true that common carriers, like railroad companies, which enjoy peculiar rights and powers at the hands of the State, are not permitted to discontinue at will the rendition of the transportation services for the performance of which they have been endowed with such special privileges and powers. A railroad company is clothed by the State with special rights, franchises, and privileges, including certain attributes of sovereignty itself, as, for example, the power of eminent domain. Enjoying, therefore as it does, these special and public powers, such railroad company is subject to correspondingly special and public duties, among which is the obligation arising by operation of law from the acceptance of its rights and franchises, and continuing during its enjoyment thereof, to continue to operate as a common carrier over the lines

and routes established by it for that purpose; such obligation arising out of, and depending upon, the unusual and peculiar rights and privileges so exercised by it."

The decision was based on the ground that the navigation company was not a public or quasi public corporation and exercised no rights from which flowed a corresponding duty to the public. (p. 583).

The distinction between that case and this is obvious. The transit company is enjoying a public franchise and is exercising public powers and privileges. By a charter from the Commonwealth, it, (or its lessor), has been granted the right and privilege to place a permanent encumbrance, by way of tracks, wires, etc., upon the public streets and highways, and by statutory authority from the Commonwealth, it has been permitted to transport light freight and express over these tracks laid in the public highways; it has accepted this special privilege and enjoyed this special and public power for years, and it is therefore subject to correspondingly special and public duties, among which is submission to the regulation and supervision of the State, as respects such right or privilege, so far as may be necessary to safeguard the public welfare. It makes no difference that it has not availed itself of the right of eminent domain. A railroad company is subject to exactly the same regulation and supervision whether it buys or condemns its right-of-way. It would scarcely be contended that a street railroad company had the right to alter its route, without regulatory supervision by the Public Service Commission, whether it was the route originally prescribed by its charter or some branch or extension which it was permitted by legislative authority to adopt.

Com. v. Fitchburg R. R. Co., 12 Gray (Mass.) 181 (1858), cited by Professor Wyman in his work on Public Service Corporations as authority for the statement that "where there is no mandatory provision it would seem that there might be withdrawal from any portion of the service which is truly separable" (section 311), which

is quoted with approval by the commission, was a pro-
ceeding instituted by the Commonwealth to forfeit the
railroad company's corporate franchise because of fail-
ure to operate regular passenger trains on certain branch
lines. The company declared its readiness to transport
passengers and passenger cars over said lines whenever
any should be offered at remunerative rates, but denied
any obligation to run passenger trains at a loss. The
court held that the company had not forfeited its fran-
chise by its action; but the case is no authority for the
proposition that the State could not reasonably regulate
the running of passenger trains on that line. On the
contrary the opinion expressly declared that the legis-
lature had reserved to itself the right to regulate the
exercise of the powers granted the railroad by its char-
ter. If it were otherwise it would be in direct conflict
with our ruling in Phila. & Reading R. R. Co. v. P. S.
C., 67 Pa. Superior Ct. 604, and could not be followed.
Most of the decisions cited by Professor Wyman were
cases which arose before the establishment of public
service commissions or similar bodies by the several
legislatures, and the delegation to them of the state's
regulatory and supervisory powers over public service
corporations, with express authority to require them to
furnish and maintain reasonably adequate service and
facilities for the accommodation of the public. They
did not decide that the State had no power to require
the continuance of public service so much as that the
corporation was, in the circumstances, reasonably justi-
fied in its partial withdrawal of service; a question
whose decision is now within the province of the Public
Service Commission.

The case of N. Y. & Pa. Ry. Co. v. P. S. C., 72 Pa.
Superior Ct. 523, is not in point at all. We there held
that the surrender of a chartered power was not a regu-
latory matter and hence not within the jurisdiction of
the Public Service Commission; that whether such
power might be surrendered without prejudice to the

public welfare had been committed by the legislature in the Act of 1856 to the court of common pleas and its jurisdiction had not been disturbed by the passage of the Public Service Company Law. We nowhere suggested therein, that because the commission had no jurisdiction over the dissolution of a corporation or the surrender of its charter powers, the State had relinquished its control in that respect. But in the present case no right has been relinquished by the transit company and no power surrendered. It is wholly an attempt to curtail the service which it rendered under its general powers and the rights incidental thereto. The Public Service Commission has jurisdiction to pass upon the question whether such action is unreasonably prejudicial to the public welfare: Peoples Nat. Gas Co. v. P. S. C., 79 Pa. Superior Ct. 560, 580, 581.

Nor do the facts in this case bring it within the language used by the Supreme Court of the United States in the cases relied on by the intervening appellee, N. P. Ry. Co. v. North Dakota, 236 U. S. 585, 59 L. Ed. 735, and C. & O. Ry. Co. v. P. S. C. of W. Va., 242 U. S. 603, 61 L. Ed. 520, since there is here no attempt to compel the transit company to install and maintain a service to which its line had not been devoted, nor to impose upon it burdens which it had not assumed; but only reasonably to regulate and supervise the maintenance of a service to which by authority of law it voluntarily devoted its line, an undertaking which it expressly assumed.

The merits of the transit company's action—whether under all the circumstances it is justifiable or not—are not before us in this proceeding and are not passed upon by us in advance of the action of the commission. We only hold that the commission had jurisdiction of the subject-matter of the complaint and was in error in holding that it had not. The order is reversed and the record is remanded to the commission for a hearing upon the merits of the complaint.