# Borough of Carlisle, Appellant, v. Public Service Commission.

*Public Service Commission—Public Service Company Law—Street railways — Abandonment—Municipal consent—Jurisdiction of the Public Service Commission.*

A street railway company which desires to abandon all of its powers and franchises, and cease its corporate existence must make application to the court of common pleas under the provisions of the Act of April 9, 1856, P. L. 293. If the intention is merely to reduce the field of activities, by abandoning certain territory which it otherwise would be compelled to serve, the determination of the question is for the Public Service Commission.

Where a street railway company did not seek to surrender its powers or franchises, but merely to reduce its field of activity by discontinuing service on certain streets, which it otherwise would be compelled to furnish and maintain, it was proper to apply to the Public Service Commission for a certificate of public convenience evidencing such consent.

The Public Service Commission represents the Commonwealth to determine whether such action is consistent with the public welfare and the company may not abandon or discontinue such service, once entered upon, without the approval of the court or the commission, as the case may be. To it the Commonwealth has committed the determination whether such action may be taken consistently with the public welfare.

But whether such withdrawal or abandonment is total or partial the local authorities are not the arbiters to decide the question as to its effect on the public welfare. Their constitutional function is exhausted when they pass upon the right of the company to enter the municipal limits. Their veto does not extend to the withdrawal or abandonment of the service entered upon with their consent.

Where the Public Service Commission has evidenced its approval of the abandonment of a part of the service of a street railway company, by the issuance of a certificate of public convenience, a municipality cannot prevent such abandonment, made in accordance with the order of the commission.

Argued March 16, 1923. Appeal, No. 24, March T., 1923, by protestant, from order of the Public Service Commission, Application Docket 5170—1921, a case of

476 CARLISLE BORO., Appellant, *v.* PUB. SER. COM.

Statement of Facts—Opinion of the Court. [81 Pa. Superior Ct. Borough of Carlisle v. Valley Railways. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Application of Valley Railways to abandon service on certain local routes in the Borough of Carlisle.

The facts are stated in the opinion of the Superior Court.

The commission after hearing, issued an order permitting the abandonment of two of the local lines and ordering the continuance of service on a third line. Borough of Carlisle, as protestant, appealed.

. *Error assigned,* among others, was the order of the commission.

*J. W. Wetzel,* and with him *Thos. E. Vale,* Borough Solicitor, for appellant.

*J. E. B. Cunningham,* and with him *Spencer G. Nauman* and *Charles H. Bergner,* for intervening appellee.

*Frank M. Hunter,* and with him *John Fox Weiss,* Assistant Counsel for Public Service Commission.

OPINION BY KELLER, J., July 12, 1923:

Valley Railways is a corporation operating a system of street railways extending, inter alia, from Market Square, Harrisburg, to the public square at Hanover and High streets, in the Borough of Carlisle. It is a consolidation of a number of corporations and operates a total trackage of 43.83 miles. One of the original corporations, the Cumberland Valley Electric Passenger Railway Company, was incorporated in 1893 for the purpose of operating a street passenger railway in the Borough of Carlisle and by virtue thereof, and under authority granted by a borough ordinance, operated its cars on the following streets of the borough: (a) Be-

ginning at the public square at High and Hanover streets thence south on Hanover Street to Pomfret Street, thence east on Pomfret Street to Spring Garden Street, thence north on Spring Garden Street to High Street and east on High Street to the borough limits, and thence to the Boiling Springs; which now forms part of the Valley Railway's main line to Harrisburg. (b) Beginning at the public square aforesaid, thence west on High Street to West Street and north on West Street to the borough limits and a point in North Middleton Township, 8,675 feet in length, being known as the Cave Hill branch. (c) Beginning at the public square aforesaid, thence north on Hanover Street and the Harrisburg Turnpike to the Army Post in North Middleton Township, 5,058 feet in length, known as the Army Post branch. (d) Beginning at the public square aforesaid, thence south on Hanover Street to Ridge Street, 2,474 feet in length, known as Hanover Street branch. The three lines (b), (c) and (d), designated above as branches, but included in the several routes described in the charter and in the borough ordinance consenting to the occupation of its streets by the railway company, were served by one car, operated by two crews of two men each on an hourly schedule. The traffic was, for the most part, very light.

On July 27, 1921, Valley Railways applied to the Public Service Commission for a certificate of public convenience evidencing the commission's approval of its ceasing to operate cars on the Hanover Street branch, (line (d) above), between Pomfret Street and Ridge Street and granting permission to remove its tracks on said Hanover Street between South Street and Ridge Street, on the ground that it could only be operated at a loss. To this application objection was filed by the Borough of Carlisle, which later filed a petition or complaint asking the commission to restrain the company from discontinuing local service in said borough as it had advertised it would do. The commission issued a temporary order requiring the Valley Railways to continue

its service in Carlisle until the further order of the commission. Valley Railways then filed a supplemental petition with the commission asking permission to abandon the operation of its trolley cars and service on all of said local lines, ((b), (c) and (d) above), and remove its tracks and poles therefrom, alleging that the said lines did not pay the expenses of operation incident thereto, that the number of people using the same was small and that there was no longer any demand or necessity for their operation. The applications and complaints were consolidated and heard together.

The order of the commission approved the application of the railway company to discontinue the rendition of street railway service on its Hanover Street and Army Post branches, (lines (c) and (d) above), and refused the application as to the Cave Hill branch, (line (b) above), but provided that after operating said line for at least another year the company might, if it so desired, again apply for leave to discontinue such service. The borough appealed.

The appeal raises questions which we will consider in the following order:

(1) Appellant questions the jurisdiction of the commission and asserts that application should have been made to the court of common pleas under the Act of April 9, 1856, P. L. 293. This contention is answered adversely to appellant in the recent case of Norristown v. Reading Transit & Light Co. et al., 277 Pa. 459, as follows: "If the company desires to surrender all of its powers and franchises and cease its corporate existence, then the application is to be made under the provisions of the Act of 1856 (Act of April 9, 1856, P. L. 293). If the intention is merely to reduce the field of activity by abandoning certain territory which it otherwise would be compelled to supply, the determination of the question is for the Public Service Commission." Valley Railways did not seek in this proceeding to surrender the power or franchise of the Cumberland Valley Elec-

tric Passenger Railway Company to operate a street railway in the Borough of Carlisle, but only to reduce its field of activity there by discontinuing service on certain streets which it otherwise would be compelled to furnish and maintain. Hence, the application was properly made to the Public Service Commission.

(2) Appellant contends that as the railway company could not enter upon any of its streets without municipal consent, it cannot discontinue service on any such streets without like municipal consent. But this, by no means, follows. The streets are the Commonwealth's. In the absence of constitutional restriction it could allow public service corporations to occupy them for public use or abandon such use. The Constitution provides (article XVII, section 9) that "no street passenger railway shall be constructed within the limits of any city, borough or township, without the consent of its local authorities," but it nowhere makes the withdrawal from or abandonment of such corporate service dependent on the consent of the local authorities; that still remains the prerogative of the Commonwealth, to be exercised as provided by law, with due regard to the public welfare. If the withdrawal or abandonment is total, as by surrender of the corporate power or franchise, the Commonwealth acts through its courts of common pleas, under the provisions of the Act of 1856, supra; if it is partial, as by curtailing service or abandoning certain lines, while still retaining the corporate power or franchise, the Public Service Commission represents the Commonwealth to determine whether such action is consistent with the public welfare: Norristown v. Reading Transit & Light Co., supra. Conditions imposed by a borough upon a street railway company as a prerequisite of entry become contractual obligations, which must be complied with no matter how onerous unless stricken down by some proper legislative exercise of the police power: Collingdale Boro. v. Phila. R. T. Co., 274 Pa. 124, 127. The borough may require a street railway company, as a condition of

such entry, to pave and maintain the streets upon which its tracks are laid, and the Public Service Commission has no authority to set aside such a franchise agreement: Boro. of Swarthmore v. P. S. C., 80 Pa. Superior Ct. 99, affirmed 277 Pa. 472; and the obligation to repair a street imposed by such a contract will be enforced while the street railway company retains its benefits by occupying such street with its tracks: Norristown v. Reading Transit & Light Co., supra. The company may not abandon or discontinue such service, once entered upon, without the approval of the court or commission, as the case may be, to whom the Commonwealth has committed the determination of whether such action may be taken consistently with the public welfare: Phila..& W. Chester Traction Co. v. P. S. C., 80 Pa. Superior Ct. 355. But, whether such withdrawal or abandonment is total or partial, the local authorities are not the arbiters to decide the question as to its effect upon the public welfare. Their constitutional function is exhausted when they pass upon the right of the company to enter the municipal limits. Their veto does not extend to the withdrawal or abandonment of the service entered upon with their consent.

(3) Appellant further suggests that the lines proposed to be discontinued are encumbered by a blanket mortgage, and that the mortgagee has not been made a party to the proceedings. This question does not concern the borough. The mortgagee must fight its own battles. It is not here complaining, possibly because it is not to its interest to do so. The appellant does not represent it in any manner and is not authorized to act in its behalf.

(4) Finally, appellant contends that the order of the commission is not reasonable and in conformity with law. This raises the question, whether the order is supported by evidence: Lansdowne Boro. v. P. S. C., 74 Pa. Superior Ct. 203, 209; for we have already ruled that

the subject-matter is within the commission's jurisdiction and statutory power.

It must be admitted that the evidence is not very satisfactory, and the commission evidently recognized this. The method adopted by the company of apportioning the entire operating expense of the system according to the mileage of the respective lines is improper and unfair in a proceeding of this character. The general administration expenses of the company will be the same whether these local lines in Carlisle are operated or not. Interest on mortgages will be paid the same whether these lines are discontinued or not. Hence, here, such items should be eliminated from consideration. The cost of electric power is in proportion to the current used, not the mileage of tracks. The company should have been able to show how much current the car in use on the local lines consumed and its approximate cost; if the car is kept operating on the Cave Hill line, this element would drop out of consideration; except that a better schedule on that line may increase the fares more than would result from operating the three lines on an hourly schedule. The same thing applies to the wages of the motorman and conductor; but the evidence shows that the travel on the Army Post and Hanover Street lines was so inconsiderable that the fares received therefrom were far from sufficient to pay the proportionate labor cost of the motorman and conductor, without considering the cost of electric power, the repair of equipment, the expense of maintaining tracks, poles and wires, and the cost of repairing or improving the streets on which such tracks were laid, in conformity with the borough ordinance. In our judgment, the evidence, while not as definite and satisfactory as it should have been, is sufficient, as respects these last mentioned items, to sustain the order of the commission.

We are not to be understood as holding that the mere fact that a branch or line or department of traffic fails to earn enough to pay the proportionate share of expenses

properly chargeable against it is sufficient to establish the right of the company to discontinue or abandon its operation; the test,—where the corporate franchise is limited to a single power,—is, ordinarily, whether the drain from the operation of thé unprofitable branch, etc., is likely to result in the loss or inadequate maintenance of the entire service: Norristown v. Reading Transit & Light Co., supra; Phila. & R. Ry. Co. v. P. S. C., 67 Pa. Superior Ct. 604; there being no reasonable prospect of profitable operation in the future: Bullock v. Florida, 254 U. S. 513, 65 L. Ed. 380. Where the corporate franchise embraces two or more distinct operations, it is unreasonable to require the company to continue to make good the loss from one operation out of the profits of the others: Brooks-Scanlon Co. v. R. R. Commission of La., 251 U. S. 396, 64 L. Ed. 323. But the public support of a branch or line may be so utterly inadequate, irrespective of its effect on the rest of the system, and so lacking in prospects of ultimate betterment, as to justify the conclusion that the public necessity for it no longer exists and that its continued operation is not required for the convenience and accommodation of the public.

On careful consideration of the whole case we are not satisfied that the order appealed from is unreasonable or not in conformity with law and it is accordingly affirmed and the appeal dismissed at the costs of the appellant.