# Borough of Swarthmore, Appellant, *v.* Public Service Commission et al.

*Public Service Company Law—Street railways—"Public duties"*
*—Duty to repair streets—Contracts—Franchises—Public Service*
*Commission—Jurisdiction—Power to abrogate contracts.*

The Public Service Commission has not been given jurisdiction to set aside or modify a covenant of a franchise agreement between a street railway company and a municipality, made prior to the passage of the Public Service Company Law, whereby the company agreed to pave and maintain the street wherein it was given permission to lay its tracks.

Such power cannot be inferred from the general power to determine and specify the service, facilities, rules, or practices to be observed, rendered, used or furnished in the performance of its public duties by a public service company.

Nor can such power be inferred from the power of the commission over rates. The sweep of the commission's power over rates is more comprehensive than its control over service, facilities or practices.

Argued October 25, 1922. Appeal, No. 23, Oct. T., 1922, by the Borough of Swarthmore, from order of the Public Service Commission, Complaint Docket No. C. 3519, upon complaint of the Borough of Swarthmore v. Philadelphia, Morton and Swarthmore Street Railway Company and Philadelphia Rapid Transit Company. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Complaint of the Borough of Swarthmore against the Philadelphia, Morton & Swarthmore Railway Company and the Philadelphia Rapid Transit Company, alleging failure of respondent companies to keep in good condition the roadways, bridges, drains and gutters along Yale Avenue, in the Borough of Swarthmore, Delaware County, in accordance with an agreement entered into between the parties.

The commission made an order specifying certain repairs to be made by the transit company between the ends of the ties but otherwise relieving the company from the paving and maintenance, as quoted in the opinion of the Superior Court. Complainant appealed.

*Errors assigned,* inter alia, were refusal to dismiss the complaint of lack of jurisdiction and the order of the commission.

*W. Roger Fronefield,* and with him *Albert N. Garrett,* for appellant.—The contract between the borough and the street railway company must be carried out unless the company is relieved by some proper exercise of the police power: Carlisle & Mechanicsburg Street Railway Co.'s App., 245 Pa. 561.

The provision of the Public Service Company Law requiring approval by the commission of the contracts of public service companies and municipalities is not retroactive to include contracts made prior to January, 1914: Collingdale Borough v. P. R. T. Co., 274 Pa. 124.

The courts have the power and jurisdiction to specifically enforce the contract in the present case: Sayre Boro. v. Waverly, etc., Traction Co., 270 Pa. 412; Reading v. Traction Co., 202 Pa. 571; hence the commission has no jurisdiction: St. Clair Boro. v. Tamaqua & Pottsville Electric Railway Co., 259 Pa. 462; Bellevue Boro. v. Ohio Valley Water Co., 245 Pa. 114; Fogelsville & Trexlertown Electric Co. v. Penna. P. & L. Co., 271 Pa. 237.

*Frederick L. Ballard,* and with him *C. J. Joyce* and *Ballard, Spahr, Andrews & Madeira,* for Philadelphia Rapid Transit Co., intervening appellee.—The ordinance contracts pleaded by the appellant do not defeat the commission's jurisdiction nor stultify its power: Boro. of Wilkinsburg v. P. S. C., 72 Pa. Superior Ct. 423;

Foltz v. P. S. C., 73 Pa. Superior Ct. 24; Scranton v. P. S. C., 73 Pa. Superior Ct. 192; 268 Pa. 192.

*Frank M. Hunter,* Counsel, and with him *John Fox Weiss,* Assistant Counsel, for the Public Service Commission.—The commission has jurisdiction, and plenary powers touching the things committed to it: Citizen's Passenger Ry. Co. v. P. S. C., 271 Pa. 39; Coplay Cement Mfg. Co. v. P. S. C., 271 Pa. 58; Fogelsville & T. Elec. Co. v. Penna. P. & L. Co., 271 Pa. 237.

The ordinance obligation sought to be enforced is no longer reasonable. The duty imposed was a duty to repair and such a duty does not comprehend the obligation to repair with a new and different kind of paving: Norristown v. Norristown Passenger Ry. Co., 148 Pa. 87; Philadelphia v. Hestonville, etc., Passenger Ry. Co., 177 Pa. 371; Williamsport v. Williamsport Passenger Ry. Co., 206 Pa. 65.

Opinion by Linn, J., November 23, 1922:

In 1900 the Borough of Swarthmore consented to the occupation of Yale Avenue with a street railway, upon condition, inter alia, that the railway company "keep in good order both the roadway of Yale Avenue for its full width from curb line to curb line, and also the bridges, flagstones, drains and gutters along said route. ......" The borough was constitutionally authorized to impose the condition: Scranton v. P. S. C., 268 Pa. 192, 194. In 1906 the grantee of the franchise was merged into another company, that then leased its property and franchises to the Philadelphia Rapid Transit Company; this lessee succeeded to the rights and obligations of the original grantee of the franchise: Collingdale Borough v. Phila. R. T. Co., 274 Pa. 124. Yale Avenue was kept in good order by the transit company until 1918, after which it required attention. The transit company refusing performance, the borough filed its petition with the Public Service Commission

alleging the obligation of the transit company to put the street in good order and its refusal to do so, and desiring an order requiring compliance with its agreement. The transit company answered, and stated its legal position in the following declaration and cross-prayer: "the paving requirements and obligations imposed by said ordinances and agreements are unreasonable, unjust, discriminatory and illegal and [respondent avers] that the enforcement thereof constitutes a direct burden upon the ability of this respondent to maintain proper service for the benefit of the public and are in effect a direct charge upon the rate of fare for such service, and as such are in violation of article III, section 11, and article V, section 2, of the Public Service Company Law. Respondent is advised and therefore avers that said ordinances and agreements are subject to the right of the Commonwealth exercised through the Public Service Commission to revise and modify any of their provisions which are unreasonable, unjust or discriminatory, or which place an improper and undue burden upon the traveling public using the service of the respondent company. Wherefore this respondent prays that the commission will enter upon an investigation and hearing concerning the unjust, unreasonable, and discriminatory paving provisions of said unapproved ordinances and agreements and the unjust, unreasonable and discriminatory practice sought to be enforced thereunder as set forth in the complaint, and thereafter issue an order disapproving the said paving provisions and declaring the terms and conditions with reference to paving which your commission will approve and determine and specify the just and reasonable practice with reference thereto to be put in force and observed hereafter."

The commission heard the case and made an order specifying certain repairs to be made by the transit company between the ends of the ties, and further ordered "That the Philadelphia Rapid Transit Company

shall not pave or maintain that part of Yale Avenue in the Borough of Swarthmore outside of the railway strip, nor do any other thing specified to be done by it in the ordinances referred to in the commission's original report, nor shall said company pay for the doing of such things by advancement, reimbursement or otherwise unless this commission shall first find and determine that such work or payment shall not prevent or unduly interfere with the ability of the said Philadelphia Rapid Transit Company to adequately perform and properly meet the duties and liabilities imposed on, it by the Public Service Company Law."

The borough has appealed and now contends that the commission has no jurisdiction of the subject-matter. The first question therefore is, has the exercised power been conferred? The statute does not expressly authorize the commission to set aside such a covenant of a franchise agreement, but the appellees contend the authority is conferred indirectly or by implication. The rule is that to sustain such power by indirection, the implication must be clear: Citizens Passenger Railway Company's Case, 271 Pa. 39, 54.

Subject to constitutional limitations, and excepting the power to suspend proposed rate increases, complete authority over rates was expressly conferred upon the commission; and it was promptly held in familiar decisions, that the power to prescribe maximum rates (article V, section 3, P. L. 1403) enabled the commission to supersede for the time being, a covenant in a franchise ordinance agreeing that rates to be charged for public service should not exceed a specified maximum. Both appellees now suggest that when necessary to regulate service, we must imply like general power authorizing the commission to substitute its judgment of what obligations a public service company may perform for the agreement of the contracting parties. They stand on article V, section 1, conferring general administrative power and authority to supervise and regulate

such companies; and as that power is restricted, "as provided in this act," P. L. 1402, they point to section 2, article V, containing the following: "Whenever the commission shall determine......that the service, facilities, rules, regulations, practices or classifications of any public service company, in respect to, or in connection with, or employed by, or in the performance of, its public duties within this Commonwealth, are unsafe, inadequate, insufficient, unjust or unreasonable, the commission shall determine and specify......the just, reasonable, safe, adequate and sufficient service, facilities, rules, regulations or practices thereafter to be put in force, observed, rendered, used, or furnished in the performance of its public duties by said public service company......"

They contend the power to supervise and regulate the service, facilities and practices, necessarily implies authority to set aside or disregard agreements like that under consideration. Applying that proposition to the evidence in the record, the brief for the intervening appellee states: "If a street railway with a gross revenue of $10,000 within the borough is to continue a regulation and practice with reference to street paving which requires the expenditure of from $15,000 to $20,000 immediately and thereafter $2,000 to $5,000 annually, it cannot continue to render reasonable service at reasonable rates."

We cannot accept the argument. The conferred power to regulate the service is not broad enough to protect the company from the effect of such contracts however improvident. If the company agreed to pay too much for its cars, tracks or other facilities, or covenanted to pay an excessive rent for a leased line, with resulting inadequacy of service, the commission may not restrain performance even though its purpose be to provide adequate service: Citizens Passenger Railway Company's Case (supra). Moreover, keeping the street in good order as covenanted, is not furnishing a facility, nor is it a

regulation or practice within the meaning of those words in the statute, as appellees contend. The definitions of service and facilities in article I, section 1, P. L. 1376, as well as the provisions in article V, section 2 (supra) concerning service, facilities, regulations and practices, confine the meaning to activity "in connection with the business of any public service company" or "in respect to, or in connection with, or employed by, or in the performance of, its public duties." The transit company is a traction motor company organized pursuant to the Act of March 22, 1887, P. L. 8, authorized to "lease the property and franchises of passenger railway companies, which they may desire to operate, and to operate said railways." It became lessee of the line in Swarthmore July 1, 1906, in the lease agreeing "to perform and discharge any and every obligation of the [lessor] arising after July 1, 1906, as to repairing, paving or repaving of streets."

As applied to this case, the term "public duties" used in the Public Service Company Law, means the public duties the company was incorporated to perform, i. e. the operation of a street passenger railway; in contrast, the duty to pay for a power house, or wages (Wilson v. New, 243 U. S. 332 at 347) or a sum specified, or according to a designated standard, as a condition of obtaining consent to occupy a highway, is a private obligation. In this connection the following extract from the opinion written by Mr. Justice SIMPSON in the Citizens Passenger Railway Case is significant: "No contract made by a utility is subject to a direct attack and revision, unless it is itself a rate contract; and no contract may be indirectly reviewed in such cases, unless it has some relation to one or more of the elements to be considered in revising the rate. So far as affects the fair value of the property of the company, these elements are set forth in article V, section 20, of the act (P. L. 1415); and probably nowhere else has the whole matter been more carefully considered or better ex-

pressed than in the opinion by our Brother KEPHART (when on the bench of the Superior Court), in Ben Avon Borough v. Ohio Valley Water Company, 68 Pa. Superior Ct. 561. We need not quote therefrom; it suffices that fixed charges for franchises and assets, long since acquired and now entitled to be retained only by continuing the payments provided in the lease thereof, are not among those elements; they do not help to determine the value of existing assets, or the cost of present operation; and, hence, in the instance before us, the rates to the public cannot be increased or diminished by reason of the fact that the rentals called for by the leases were unreasonable when made or are unreasonable now. If this were not so, then the greater the fixed charges the greater would be the fare to be paid by the public, which would be directly in the teeth of the only reason on which such statutes can be sustained.

"Besides, neither the commission nor the public has anything to do with the disposition of the rates which the utility is authorized to collect; nor is it any concern of either that the sum total thereof may not be sufficient to enable the operating company to pay its fixed charges and maintain or extend its service and facilities. The company is entitled to receive a reasonable return for the service it furnishes, and no more; the public is entitled to receive an adequate return for the reasonable rates in pays, and no more. Beyond making sure of these two things, the statute does not vest a greater power in the commission, so far as the matter under consideration is concerned. It has ample authority to see that its orders, as to service and facilities, are fully complied with by the Philadelphia Rapid Transit Company; if the effect of so doing is that the latter's stockholders receive no return on their investment, because of the necessity for compliance with the terms of the leases, this concerns them alone and not complainants or the public......" (271 Pa., at pages 55 and 57).

The brief of the transit company states: "But the commission's power over regulations and practices affecting rates and service is just as broad as its power over the rates themselves. The language of article V, section 2, of the law is not qualified language. It does not save to municipalities the right, by new or continuing mandate, to regulate the practices of public service companies affecting their public duties. Surely the commission would not hesitate to prescribe headway, schedule or route—though these were 'fixed' in a consent ordinance. Yet this paving requirement has a more vital relation to service and rate than any mere regulation of route or schedule." Subject to limitations (Allied Associations v. Pub. Ser. Comm., 70 Pa. Superior Ct. 13; Setzer v. Pottsville, 73 Pa. Superior Ct. 573; Easton v. Miller, 265 Pa. 25) the power to prescribe headway, schedule or route may be conceded, because those practices relate to the performance of public duties which the company was incorporated to perform, but in those instances the service is affected directly by the exercise of the power of the commission, and not remotely as if the commission set aside the company's contract and restrained payment whenever it concluded the service would suffer if the obligation were performed. The sweep of the commission's power over rates is more comprehensive than its control over service, facilities or practices. If the company pay more for facilities than they are reasonably worth, only the value and not the excess is considered in determining the reasonable rate. That rate must be allowed if the property will earn it, and the service at that rate must be made adequate if the company remain in business. Without now considering the extent to which the police power will justify legislative action in the direction of the contention of the appellees, we all agree that the power exerted by the commission has not yet been conferred. Having that conclusion it is unnecessary to consider the general obligations of a passenger railway company occupying a highway, referred to

in the argument and considered in Sayre Borough v. Traction Co., 270 Pa. 412, and Collingdale Boro. v. Transit Company (supra) and the cases cited in those opinions.

The order of the commission is reversed and the record is returned with instructions to dismiss the complaint.