## Removal of Street Railway Tracks.  No. 1

MARGIOTTI, Attorney General, July 1, 1936.—We have your request to be advised concerning the power of the Public Service Commission to attach, as a condition to its granting permission to a street railway company to abandon service, a requirement that the company should remove all its tracks and other facilities from the improved portion of the highway and repave and restore that por-

tion previously occupied by its facilities to the same condition as the remainder of the roadway at the time of such removal.

Clearly, such a requirement would enforce the coextensive legal obligation imposed upon the railway company in most instances by its franchises, and in every case by common law.

This duty to repave and restore is adequately established in formal opinion no. 21 of this department, In re Lancaster, Ephrata & Lebanon St. Ry. Co., 16 D. & C. 624, and in the numerous authorities therein cited.

This common-law responsibility is stated in 60 C. J. 366, §265, as follows:

"On abandonment of its railroad the company is obliged to remove its tracks and track structures forthwith; and this is so in the absence of any specifically stated obligation in the franchise to do so; and it is also its duty to restore the pavement of the invaded street or highway to the condition of the adjacent pavement. And equity has jurisdiction to compel the company to perform its duty in this regard."

Therefore, it must be determined whether the Public Service Commission has the power to compel the street railway company to fulfill this legal obligation as a condition to the granting of permission to abandon its service, and this necessitates a consideration of the supervisory powers of the commission over the operation and facilities of such companies.

The Public Service Company Law of July 26, 1913, P. L. 1374, and its amendments and supplements place the broad duty upon the commission to see that the facilities of these companies under its jurisdiction are kept in such condition that the safety of the public will not be jeopardized. For example, article v, sec. 13, of the law authorizes the commission to "establish such standards of facilities and service . . . as shall be reasonably necessary for the safety, accommodation, or convenience of

. . . the public". Likewise, section 2 of the same article empowers the commission to require "safe" facilities.

While there is no Pennsylvania case or statute specifically defining the scope of the jurisdiction of the commission upon abandonment of service, it has generally been conceded that the power of the commission to determine the incidents of abandonment is necessarily implied: Borough of Carlisle v. Public Service Commission, 81 Pa. Superior Ct. 475 (1923).

At first glance, the case of Borough of Swarthmore v. Public Service Commission et al., 80 Pa. Superior Ct. 99 (1922), affirmed in 277 Pa. 472 (1923), seems applicable, because it held that the commission did not have jurisdiction to modify an agreement between a street railway company and a municipality establishing the obligation of such company to pave and maintain the street wherein its tracks were laid. However, this case is distinguishable because the agreement enlarged the company's common-law responsibility by requiring it to pave the streets from curb to curb. The appellate courts simply decided that the commission had no power to relieve the company of its broad obligation under the contract. No question of abandonment was there presented.

The removal of the rails and other facilities of a street railway company from the roadway without restoration of the surface thereof would generally result in leaving large holes therein, thus creating a condition dangerous to the traveling public, and, ipso facto, a public nuisance. The Public Service Commission is certainly within those incidental powers to provide safety for the general public, referred to in the various sections of The Public Service Company Law, if it takes steps to eliminate these dangerous conditions for which companies under its supervision are solely responsible. It would be a ridiculous commentary upon our system of government to rule that the Public Service Commission is interested only in the safety of the portion of the public which travels upon the utilities under its supervision, to the detriment and danger of the

balance of the traveling public. Such an interpretation would permit a street railway company to abandon service and go out of existence without fulfilling its common-law obligation to restore the street, and the commission, by granting permission to abandon service, would be preventing in many cases the enforcement of this lawful obligation. Clearly the legislature never intended such absurd consequences.

The Swarthmore case merely prevented the Public Service Commission from diminishing the obligations of the utility; it did not prevent the commission from enforcing existing obligations. The commission has no power to relieve by its express mandate the railway company from its obligation to reconstruct and restore the surface of the roadway. Yet, in many cases, unconditional permission to abandon service results in the same sort of relief to the railway company.

Therefore, we are of the opinion that it is the duty of the Public Service Commission to refuse to grant permission to a street railway company to abandon its service, unless it removes all its tracks, holes, wires and other facilities from the improved portion of the highway and restores and repaves that portion of the highway previously occupied by its tracks and such other facilities so as to conform with the remaining surface of the roadway.

From Frederic Ray, Harrisburg.