Opinion by
 

 Parker, J.,
 

 These five appeals involve the same controlling questions and the same fundamental principles of law; they were argued together and will therefore be disposed of in one opinion. Each of the utilities, assuming to comply with the Public Utility Law, Act May 28, 1937, P. L. 1053, Art. VI (66 PS 1241 et seq.), filed with the Pennsylvania Public Utility Commission a “securities certificate” which the commission rejected, and the companies have appealed from those decisions.
 

 The companies entered into agreements, subject to the approval of the commission, for the discounting of conditional sales contracts covering sales of electric and gas appliances to the particular utility’s customers to the extent of the unpaid balances due thereon, in the case of Erie Lighting Company with Commercial Investment Trust Inc., and in the cases of the four other utilities with the Chase National Bank of New York City. The discounting contracts provided that in the event any of the conditional sales contracts should become in default such contracts would be repurchased by the utility which had discounted them. There were other provisions of a similar nature and the net effect of the agreements for discounting was to make the respective utilities contingently liable for payment of principal and interest of the sales contracts. It was alleged to be the purpose of the discounting contracts that the utility would be provided with additional working capital so that they might purchase appliances and sell them to their customers on the deferred payment plan, and it was claimed that in the cases of some of the appellants a saving would be made in interest charges. The contracts to be discounted were limited in amount and were confined to those covering appliances incident to the utility’s business sold to customers of the particular utility either directly by the utility or by a dealer who sold his contract to the utility.
 
 *193
 
 The securities certificates, either directly or by way of exhibits, set forth in much detail the material facts deemed by the utilities to be sufficient for a fair consideration of the propriety of approving or rejecting such certificates. The commission failed to indicate either in its orders or on argument that it required any further information than was so furnished.
 

 On August 16, 1937, the commission rejected the securities certificates of all the appellants except that of Erie Lighting Company, and on September 9, 1937, rejected the certificate of the last named company, using in each case identical language. The orders were in this form: “Notice is hereby given you, as Vice-President for Metropolitan Edison Company, that the above entitled Securities Certificate was rejected by the Commission on August 16,1937. It is the policy of the Commission to prevent electric utilities from engaging in the sale of appliances, and in cases in which this situation already exists, the sale of appliances should be segregated from the sale of power through the establishment of an affiliated, but not subsidiary appliance company.”
 

 We are all of the opinion these rejections cannot be sustained. We are in agreement with the statement in the commission’s brief that the Public Utility Law invests the commission with broad powers in the supervision and regulation of utilities with respect to protecting the rights of the public and that the commission, as provided by Section 901 of that law (66 PS 1341), “may make such regulations,
 
 not inconsistent with the law,
 
 as may be necessary or proper in the exercise of its powers or for the performance of its duties under this act.” (Italics supplied.) “Even in quasi-judicial proceedings their informed and expert judgment exacts and receives a proper deference from courts when it has been reached with due submission to constitutional restraints”:
 
 Ohio Bell Telephone Co.
 
 
 *194
 

 v. P. U. C.,
 
 301 U. S. 292, 304, 57 S. Ct. 724, 730.
 

 We are concerned, however, rather with the exceptions than with the general rule. The commission undertook to dispose of the applications of the appellants upon the basis of the facts alleged in the applications without a hearing. It rejected the securities certificates, assigning as a sole reason that “it is the policy of the Commission to prevent electric utilities from engaging in the sale of appliances.” This immediately suggests the inquiries as to whether the commission acted “with due submission to constitutional restraints” and whether it acted with due authority. Among the restraints affecting those performing administrative and quasi-judicial functions are the requirements that the agency so acting shall afford the interested parties a fair and open hearing, that it make findings of fact so that its action may be reviewed, if necessary, by the courts, and that it assign a reason for its action.
 

 gpeaking on that subject, Mr. Justice Cardozo, in the Ohio Bell Telephone Company case, supra, said: “Indeed, much that they do within the realm of administrative discretion is exempt from supervision if those restraints have been obeyed. All the more insistent, is the need, when power has been bestowed so freely, that the ‘inexorable safeguard’
 
 (St. Joseph Stock Yards Co. v. United States
 
 [1936], 298 U. S. 38, 73, 56 g. Ct. 720, 735, 80 L. Ed. 1033) of a fair and open hearing be maintained in its integrity.
 
 Morgan v. United States
 
 [1936], 298 U. g. 468, 480, 481, 56 g. Ct. 906, 911, 80 L. Ed. 1288;
 
 Interstate Commerce Commission v. Louisville & N. Ry. Co.,
 
 supra. The right to such a hearing is one of ‘the rudiments of fair play’
 
 (Chicago, M. & St. P. Ry. Co. v. Polt
 
 [1914], 232 U. g. 165, 168, 34 S. Ct. 301, 58 L. Ed. 554) assured to every litigant by the Fourteenth Amendment as a minimal requirement.
 
 West Ohio Gas Co. v. Public Utilities Commission (No. 1),
 
 
 *195
 

 (No. 2),
 
 supra;
 
 Brinkerhoff-Faris Co. v. Hill
 
 [1930], 281 U. S. 673, 682, 50 S. Ct. 451, 454, 74 L. Ed. 1107. Cf.
 
 Norwegian Nitrogen Co. v. United States,
 
 supra. There can be no compromise on the footing of convenience or expediency, or because of a natural desire to be rid of harassing delay, when that minimal requirement has been neglected or ignored.”
 

 At this point we advert to a main contention of the appellants. They argue that because Article VI contains no provision for a hearing, the article violates the Fourteenth Amendment to the United States Constitution, relying principally on the case of
 
 Southern Railway Co. v. Virginia ex rel. Shirley,
 
 290 U. S. 190, 54 S. Ct. 148. We do not deem it necessary to determine that question on this appeal. It is a well recognized rule that a court will never heed objections to the constitutionality of an act of assembly unless the litigant is affected by the particular feature alleged to be in conflict with the constitution. He must show that the alleged unconstitutional feature injures him and so operates as to deprive him of rights protected by the constitution:
 
 Mesta Machine Co. v. Dunbar,
 
 250 Pa. 472, 476, 95 A. 585;
 
 Plymouth Coal Co. v. Com. of Penna.,
 
 232 U. S. 531, 34 S. Ct. 359.
 

 Here, the appellants presented their application for approval of the securities certificates setting forth the facts which they deemed material and relevant. The commission, by disposing of the applications upon such allegations of fact, thereby accepted such facts to be as stated and undertook to dispose of the cases on the records made by the utilities. There was therefore no necessity for hearings. At the same time such procedure limited the commission to the facts brought upon the record by the appellants. The facts here and those in the Southern Railway Company case are not comparable. There the commission undertook to act upon the basis of facts which were not upon the record.
 
 *196
 
 The appellants have not suffered by reason of the fact that there was not a hearing. They had their day in court and they made the record which presented the facts necessary for deciding whether the certificates should be approved or rejected. The controlling question presented to us is whether the answer of the commission was in conformity to law.
 

 The restraints imposed upon the commission to which legislative power has been delegated must, however, be observed, particularly the requirement that its action be predicated upon facts contained in the record. We are dealing with a situation where an agency is undertaking to act by .virtue of a delegation of legislative power. If the authority attempted to be exercised is not to be construed as an unlawful delegation of power belonging to the legislature, its exercise must be supported by facts found in the record:
 
 Panama Refining Co. v. Ryan,
 
 293 U. S. 388, 432, 55 S. Ct. 241, 253;
 
 Wichita R. & L. Co. v. P. U. C.,
 
 260 U. S. 48, 59, 43 S. Ct. 51, 55;
 
 Mahler v. Ely,
 
 264 U. S. 32, 44, 44 S. Ct. 283, 288.
 

 It is provided by Section 603 of the Public Utility Law that every notice of rejection shall contain a statement of the specific reasons for rejection. The commission complied with this requirement assigning as a sole reason that it was “the policy of the Commission to prevent electric utilities from engaging in the sale of appliances.”
 

 The legislature has in the Public Utility Law laid down general principles which control the actions of the commission and it is the province of the commission to take those general rules and apply them to a particular state of facts so as to accomplish the declared purpose of the legislature. That course was not followed, for what the commission did in each case was to itself formulate a general rule which it has denominated a policy and to make that rule of universal application. In other words, it has not said how, where
 
 *197
 
 and on what conditions the particular utility shall exercise the rights granted to it by its charter to sell certain appliances, but has attempted to proscribe any such sales by electric utilities.
 

 “The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend”:
 
 Locke’s Appeal,
 
 72 Pa. 491, 498. “The Congress may not delegate its purely legislative power to a commission, but, having laid down the general rules of action under which a commission shall proceed, it may require of that commission the application of such rules to particular situations and the investigation of facts, with a view to making orders in a particular matter within the rules laid down by the Congress”:
 
 Interstate Commerce Com. v. Goodrich Transit Co.,
 
 224 U. S. 194, 214, 32 S. Ct. 436, 441.
 

 Hot only did the commission err in its approach to the question presented to it, but the particular policy adopted is not in accord with the law of this Commonwealth. In rejecting applications such as were made by the appellants, a rejection might be supported by matters of law or of fact or by mixed matters of law and fact. We will examine the orders in each of these respects for the purpose of ascertaining whether they can be supported.
 

 In
 
 Malone v. Lancaster Cas Light, Etc., Co.,
 
 182 Pa. 309, 321, 37 A. 932, the Supreme Court said: “It is argued for plaintiff that the charter purpose of the Gas Company is limited by the words ‘manufacturing and supplying illuminating and heating gas/ and that nothing can be included which is not a necessary part or appliance for manufacturing or supplying. This is too narrow and literal a construction, and overlooks the fundamental object of the corporation, the manufacture and supply of gas to customers for profit. It
 
 *198
 
 would be of no use to manufacture gas if there were not customers to buy, and hence the company may fairly supply not only the gas itself, but incidentally such appliances and conveniences as will induce new customers to use gas or old ones to use more. This is a legitimate mode of extending the company’s business, in direct furtherance of its charter object.” In
 
 Com. ex rel. Baldrige v. Phila. Electric Co.,
 
 300 Pa. 577, 151 A. 344, the same principle was re-examined and approved with relation to a corporation organized to supply electricity.
 

 In addition, Section 912 (66 PS 1352) of the Public Utility Law specifically recognizes the right of utilities to deal in appliances by imposing regulations with reference to the sale and leasing of appliances and equipment. We search in vain throughout the record and the brief of the commission for any principle of law that would support the orders.
 

 As to the factual basis for the orders the record is likewise void of support. Each application was primarily one dealing with securities and obligations and that is the subject covered by Article VI of the Public Utility Law under which the certificates were filed. There is not a suggestion by the commission in its orders or in its brief that the proposed creation of a contingent liability by the appellants is in any respect objectionable in its financial aspects. In fact the only evidence before the commission is to the effect that a saving will be effected by several of the appellants and that the financial position of all of them will be improved. The objection by the commission goes to the purposes for which the obligation should be created.
 

 When we consider the purposes for which the credits will be used, we hear no criticism of the particular activities other than that it is contrary to the “policy” of the commission. There is no evidence that the sale of appliances has transgressed the legitimate field of
 
 *199
 
 operations of utilities either in character or quantity. The evidence is to the contrary and, as we have seen, the rejections cannot be supported by facts not appearing in this particular record. It is well settled that neither the commission nor this court is the business or financial manager of utilities and that the judgment of the board of directors of the corporation is entitled to consideration and cannot be ignored unless its actions are contrary to the public interest:
 
 State ex rel. Southwestern Bell Tel. Co. v. P. S. C.,
 
 262 U. S. 276, 289, 43 S. Ct. 544, 547;
 
 State P. U. C. v. Springfield G. & E. Co.,
 
 291 Ill. 209, 234;
 
 Chambersburg Gas Co. v. P. S. C.
 
 116 Pa. Superior Ct. 196, 227, 176 A. 794.
 

 As the law requires the commission to give the reasons for rejection, we must assume that the only basis for the rejection was that assigned by the commission and can only conclude that the orders complained of are arbitrary and unreasonable and not in conformity to law.
 

 The present law contemplates a speedy disposal of applications for securities certificates, it being provided that at the end of thirty days after the filing of such certificates, if no order or rejection has been entered, such certificates shall be deemed in fact and law to have been registered. In our opinion the certificates should not have been rejected.
 

 The order of the commission in each appeal is reversed and it is directed that the certificates stand as approved and that the costs of the appeals shall be placed upon the Public Utility Commission.