Argued November 15, 1949.
The Public Utility Commission dismissed the joint complaint of Pennsylvania Hotels Association (hereafter called the Association) and Penn-Harris Hotel Company (called Penn-Harris) against The Bell Telephone Company of Pennsylvania (called Bell), and the complainants appealed separately. They charged in effect that Bell violated the Public Utility Law of May 28, 1937, P. L. 1053, as amended, 66 P. S. § 1101, et seq., by omitting from its filed tariffs the scale of commissions paid by Bell to the hotels for services rendered by the hotels in connection with the semi-public branch exchange service to which they subscribed.
The Association comprises 205 Pennsylvania hotels; 125 of them subscribe to the branch exchange service; and 56 of these are represented by the Association and mentioned in the complaint. The Association itself is not *Page 396 
a subscriber to the type of service here involved. The Law, supra, § 1001, 66 P. S. § 1391, provides: "The commission, or any person, corporation, or municipal corporation having aninterest in the subject matter, . . . may complain in writing . . ." (Emphasis added.) Obviously, the Association does not have a direct, immediate, pecuniary and substantial interest in the subject of the controversy, and the Commission correctly held that it was not a proper party. Lansdowne Borough Board ofAdjustment's Appeal, 313 Pa. 523, 170 A. 867; Pa. CommercialDrivers Conference v. Milk Control. Com., 360 Pa. 477,62 A.2d 9; Seitz Liquor License Case, 157 Pa. Super. 553,43 A.2d 547.
Penn-Harris is qualified to litigate the questions herein raised. It utilizes Bell's semi-public branch exchange service. By it Penn-Harris' guests, and those of other hotels which use the service, secure incoming and outgoing telephone service by means of extension stations connected with a central switchboard located on the hotel premises and operated by hotel employes. The equipment is owned by Bell and leased to the hotel at a monthly rental prescribed in the tariffs filed with the Commission or its predecessor. The reasonableness of that rent is not here questioned. The tariffs provide for a contract under which the hotel is designated as Bell's agent for the collection of the toll charges incurred by the guests. For the service rendered as collecting agent Bell pays a stipulated commission which, although changed from time to time, is uniform, and is paid by deducting the amount earned from the rent and the total of toll charges shown on the bill submitted monthly to the hotel. Since 1924, without objection by any one before the present complaint was filed in 1946, Bell's tariffs did not state the scale of the commissions and the contracts for them were not filed with the Commission. *Page 397 
The contracts also provided that the hotel should "collect for the Company its regularly established tolls." Violation of this provision precipitated this controversy. Penn-Harris and other hotels began to impose surcharges upon its guests, i.e., they charged and collected from their guests a sum of money over and above the legal rate established by Bell, and retained the surcharge for themselves. Hence the guest paid more than the rate established by Bell's tariffs, and the hotels, which obviously are not public utilities, collected compensation for the use of telephone facilities. In 1942 the Commission informed Bell that this constituted a violation of its tariffs and directed it to institute necessary measures to have its tariffs strictly followed. Copies of this letter were sent to Penn-Harris and other hotels. No further action was taken pending completion of certain proceedings before the Federal Communications Commission. In 1944 that Commission ordered all telephone companies to file new tariffs which expressly stated that surcharges by hotels in excess of the duly published interstate tariff rates were prohibited, and its order was affirmed by the United States Supreme Court. Ambassador, Inc.,v. United States, 325 U.S. 317, 65 S. Ct. 1151. Subsequently Bell notified Penn-Harris and other hotels that unless they ceased making surcharges on intrastate toll messages their contracts would be cancelled. Penn-Harris and other hotels continued the surcharges, and their contracts were cancelled. Consequently, no contract for commissions has been in force between Bell and Penn-Harris since that cancellation, and yet Penn-Harris has withheld $7,148 as alleged commissions. AfterBell Telephone Co. of Pa. v. Phila. Warwick Co., 355 Pa. 637,50 A.2d 684, was instituted to collect the commissions withheld by that hotel, the instant complaint was filed.
Coincident with the cancellations, Bell offered a new contract under which the hotel was required, inter alia, *Page 398 
to agree that it would not charge its patrons any sums for telephone service in addition to those set forth in Bell's tariffs. On its part, Bell agreed to pay to the hotel for its services for collecting the toll charges a scale of commissions which differed from that previously paid, and which was not set forth in Bell's tariff filed with the Commission.[1] Appellants now contend that Bell's failure to file as a part of its tariffs the contract containing the rate of the commissions is a violation of the Law, supra, § 302, 66 P. S. § 1142, which requires utilities to file tariffs showing the rates established by them, and of § 308(a), 66 P. S. § 1148, which requires utilities to notify the Commission of any change of rates.
The sole issue, as stated by appellants, is "whether or not the rules and regulations including the commissions allowed hotels as subscribers of semi-public branch service are `rates' within the meaning of that term as defined in the Public Utility Law, § 2(19), 66 P. S. § 1102, and as a `rate' should be plainly specified in respondent's tariff."
Section 2(19), supra, provides: "`Rate' means every individual, or joint fare, toll, charge, rental, or othercompensation whatsoever of any public utility, or contract carrier by motor vehicle, made, demanded, or *Page 399 received for any service within this act, offered, rendered, orfurnished by such public utility, or contract carrier by motor vehicle, whether in currency, legal tender, or evidence thereof, in kind, in services or in any other medium or manner whatsoever, and whether received directly or indirectly, and any rules, regulations, practices, classifications or contracts affecting any such compensation, charge, fare, toll, or rental." (Emphasis added.)
This broad and comprehensive definition embraces substantially any and all compensation received by a public utility for services rendered to a consumer. It emphasizes and applies only to compensation received by the utility in return for services rendered by it. Clearly the definition does not cover contracts, such as here involved, which relate toservices rendered to the utility and for which the utility expends money. Instead of deducting the commissions from the hotels' monthly bills, Bell might accomplish the same result by a separate remittance to the hotel, as is actually done in the case of pay station phones where Bell collects cash deposits and remits a percentage of the receipts to the owner of the premises on which the station is located.[2] The commissions are not, within the statutory meaning, a "rate", but are merely part of Bell's operating expenses. "The rate is the consideration that the company receives for the service":Swarthmore Borough v. P. S.C., 277 Pa. 472, 483, 121 A. 488.
Adoption of the construction urged by appellants would involve the Commission in the internal management of utilities. It would require the Commission to pass judgment upon the necessity for the service contracted *Page 400 
for and the reasonableness of the compensation paid by the utility. This is a purely managerial function and, under all our cases, is not a power statutorily committed to the Commission. Northern Pa. Power Co. v. P. U. C., 333 Pa. 265,5 A.2d 133. "It [the Commission] does not manage, but regulates. The company spends its money as it sees fit. It can adopt any plan it wishes, and the commission cannot directly stop it":Swarthmore Borough v. P. S.C., supra, p. 483. (Emphasis added.) Of course, "The commission may consider its subject-matter [e.g., the commissions paid to hotels] as a rate factor in a rate base" case. Id. p. 483.
The decisions of utility commissions of other states and the opinions of their appellate courts, relied upon by appellants, have been studiously examined, but they relate to facts not here present, and they are not persuasive.
Order affirmed.
[1] The new scale of commissions, as reported in the order of the Commission, is: "Respondent agreed to pay to the hotel a commission of 60 per cent of the amounts, excluding taxes, paid to respondent by the hotel for local messages; to pay to the hotel a commission of 15 per cent of the amounts, excluding taxes, paid for all toll messages sent-paid or received-collect by others than the hotel; and, to pay to the hotel a commission of 10 per cent on amounts, excluding taxes, paid to the respondent by the hotel for telegrams, cablegrams, and radiograms sent-paid or received-collect."
Under the old scale Bell paid "60% of the gross receipts for local messages and a commission of twenty per cent (20%), not to exceed twenty-five (25¢) cents on any one message, of the gross receipts from toll messages, send-paid and received-collect at stations established hereunder."
[2] At the oral argument it was stated that some utilities, in order to serve the convenience of their patrons, appoint banks or other reliable concerns as collecting agents and pay them for the service thereby rendered. If such agents are also patrons of the utility, should their compensation be considered a "rate" and brought within the rate-regulating power of the Commission?