New Castle, Appellant, *v.* Pennsylvania Public
Utility Commission.

Argued November 17, 1952.   Before RHODES, P. J.,
HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ. (GUN-
THER, J., absent).

*Robert White,* City Solicitor, for appellant.

*Albert E. Luttrell,* Assistant Counsel, with him *Lloyd S. Benjamin,* Acting Counsel, for Public Utility Commission, appellee.

*R. R. Artz,* with him *A. M. Donnan, Windsor F. Cousins, Samuel W. Pringle* and *Dalzell, Pringle, Bredin & Martin,* for railroad company, intervenor, appellee.

OPINION BY RHODES, P. J., January 20, 1953:

The City of New Castle has appealed from an order of the Pennsylvania Public Utility Commission of February 18, 1952, granting the Pennsylvania Railroad Company a certificate of public convenience evidencing Commission approval of the Railroad's abandonment of passenger train service between Beaver Falls and Sharon. The certificate authorized the discontinuance of passenger trains Nos. 404 and 405. Train No. 404 was operated daily except Sunday from Sharon to Pittsburgh, and train No. 405 was operated daily except Sunday from Pittsburgh to Sharon. The Railroad operated these two passenger trains between Pittsburgh and Sharon through Beaver Falls. The abandonment sought and approved by the Commission relates only to service on that part of the line between Beaver Falls and Sharon. The service between Beaver Falls and Pittsburgh remains unaffected.

Appellant does not question the sufficiency of the evidence to support the Commission's finding that abandonment of the service was in the public interest. Further, appellant admits the jurisdiction of the Commis-

sion, under section 202 of the Public Utility Law of May 28, 1937, P. L. 1053, as amended, 66 PS §1122, to grant Railroad a certificate of public convenience authorizing the abandonment or curtailment of the service. Section 202 of the Public Utility Law, 66 PS §1122, provides: "Upon approval of the commission, evidenced by its certificate of public convenience first had and obtained, and upon compliance with existing laws, and not otherwise, it shall be lawful: . . . (d) For any public utility to dissolve, or to abandon or surrender, in whole or in part, any service, right, power, franchise, or privilege . . ."

Appellant presents a single question on this appeal. It claims that where a utility abandons or surrenders, "in whole or in part, any service, right, power, franchise, or privilege," the utility must not only apply to the Commission for approval, but must also proceed in the proper court of common pleas, under the Act of April 9, 1856, P. L. 293, 15 PS §501, and obtain permission to surrender any power contained in its charter.

The jurisdiction of the Commission to grant certificates authorizing abandonment or curtailment of service by a public utility, as expressly granted under section 202 of the Public Utility Law, is clear, and has repeatedly been upheld. *West Penn Railways Co. v. Pennsylvania Public Utility Commission*, 135 Pa. Superior Ct. 89, 4 A. 2d 545; *Jennings v. Pennsylvania Public Utility Commission*, 140 Pa. Superior Ct. 569, 14 A. 2d 882; *West Penn Railways Co. v. Pennsylvania Public Utility Commission*, 142 Pa. Superior Ct. 140, 15 A. 2d 539; *Irwin Borough v. Pennsylvania Public Utility Commission*, 142 Pa. Superior Ct. 157, 15 A. 2d 547; *Lacy v. East Broad Top Railroad and Coal Co.*, 168 Pa. Superior Ct. 351, 77 A. 2d 706; *Commuters' Committee v. Pennsylvania Public Utility Commission*, 170 Pa. Superior Ct. 596, 88 A. 2d 420. A party ag-

grieved by the Commission's order granting or refusing a certificate may appeal. *Commuters' Committee v. Pennsylvania Public Utility Commission,* supra, 170 Pa. Superior Ct. 596, 88 A. 2d 420. Although appellant admits the jurisdiction of the Commission to issue the certificate authorizing abandonment of service, and does not attack the order of the Commission as lacking evidentiary support or as being contrary to law, it asks this Court to rule that, in addition to obtaining a certificate of public convenience from the Commission, the utility must proceed in the court of common pleas, under the Act of 1856, 15 PS §501, to surrender its charter powers pro tanto, where, as here, it withdraws, curtails or abandons some of its services.

The question appellant attempts to raise is not before us on this appeal. The appeal is from an order of the Commission which appellant does not attack, but admits to be valid. An appellate court cannot render an advisory opinion as to whether additional proceedings are necessary to abandonment of service by a public utility where the question is not raised on the record before the court. *Schoenbrun v. Nettrour,* 360 Pa. 474, 476, 61 A. 2d 868; *O'Donnell v. Pennsylvania Liquor Control Board,* 158 Pa. Superior Ct. 533, 536, 45 A. 2d 369. On the present record we would have no reason to discuss the phrase in section 202 of the Public Utility Law, 66 PS §1122, upon which appellant relies, which makes it lawful for a utility to abandon service only "upon compliance with existing laws, and not otherwise." We have no doubt there are available methods by which appellant could properly raise the question it seeks to have decided. We are obliged to dismiss the appeal as appellant, admitting the validity of the Commission's order from which its appeal has been taken, presents no question which this Court may determine on the record.

However, we think it may well be said, although we make no ruling on the question, that there seems to be a clear distinction (applicable under the present Public Utility Law of 1937) between cases where a utility surrenders and abandons its powers and ceases to do business under its charter, and cases where the utility merely limits its field of service by withdrawing or curtailing the extent of its service to the public. As Judge KELLER, later President Judge, said in *New York & Pennsylvania Railway Co. v. Public Service Commission*, 72 Pa. Superior Ct. 523, 529, 530: "The term, 'power,' as used in the Act of 1856, in connection with the words, 'contained in its charter,' does not mean a mere privilege or immunity; it refers to the franchise to do the particular thing or things granted the corporation in its charter: Words and Phrases, vol. 2, p. 1606; Thomas v. R. R. Co., 101 U. S. 82. The power contained in the charter of the appellant was to operate a steam railroad in Pennsylvania under the provisions of the General Railroad Act. When it surrendered that power, it gave up its franchise to operate a railroad. The appellees seem to have confused the term, power, with the extent of service or operation under such power. The curtailment of service, the withdrawal of trains, the failure to supply equipment, the cutting off of switches and branches, so long as the corporation retains its power to operate a railroad, are matters relating to the extent of service or operations, and are within the regulatory power of the commission. But the surrender of a chartered power is not a regulatory matter. It is the absolute relinquishment of the corporate franchise to the extent of the power surrendered, and, if the franchise is to do but one thing, is equivalent to a dissolution." See, also, *Peoples Natural Gas Co. v. Public Service Commission*, 79 Pa. Superior Ct. 560, 579, 580; 279 Pa. 252, 123 A.

799; 270 U. S. 550, 46 S. Ct. 371, 70 L. Ed. 726; *Borough of Carlisle v. Public Service Commission*, 81 Pa. Superior Ct. 475, 478; *Norristown v. Reading Transit & Light Co.*, 277 Pa. 459, 464, 466, 121 A. 495.

In the present case, so far as the record discloses, Railroad did not abandon its track or right of way or surrender any charter or franchise power, and undoubtedly the Commission could order further passenger service in the future upon showing of public necessity.

Appeal is dismissed, at the cost of appellant.