Pennsylvania Railroad Co., Appellant, *v.* Pennsylvania Public Utility Commission.

Argued September 16, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, and WATKINS, JJ. (ERVIN, J., absent).

*Windsor F. Cousins*, with him *Harris J. Latta, Jr.*, for appellant.

*Edward Munce*, Assistant Counsel, with him *Edward Friedman*, Deputy Attorney General, and *Thomas M. Kerrigan*, Counsel, for Pennsylvania Public Utility Commission, appellee.

*William D. Valente,* Assistant City Solicitor, with him *David Berger,* City Solicitor, for City of Philadelphia, intervening appellee.

*Mead J. Mulvihill, Jr.,* Assistant City Solicitor, with him *J. Frank McKenna, Jr.,* City Solicitor, for City of Pittsburgh, intervening appellee.

*Lockwood W. Fogg, Jr.,* with him *George C. Doering, David P. Reese,* and *Gordon E. Neuenschwander,* for various railroads, under Rule 46.

OPINION BY WRIGHT, J., November 14, 1958:

By order nisi dated September 9, 1957, the Public Utility Commission proposed a new regulation applicable to passenger train service. This new regulation was a supplement to the Commission's Railroad Regulations and was designated Rule 10. Railroads furnishing passenger train service in the Commonwealth filed exceptions, whereupon the Commission conducted a hearing at which the railroads offered evidence in opposition to the proposed rule. By final order dated March 24, 1958, Commissioner Houck dissenting, the Commission adopted its new Rule 10 in a form differing from that proposed in the order nisi. A petition of the railroads for rehearing, reconsideration, and modification was denied by the Commission, without opinion, on May 7, 1958. Under the heading "Curtailment of Service" Rule 10 in its final form provides that, with certain exceptions, "An application shall be filed with and approved by the Commission prior to the removal, elimination, or substantial change in the schedule of any passenger train . . ." From that requirement this appeal was taken at No. 313 October Term 1958. The Cities of Philadelphia and Pittsburgh were granted leave to intervene as appellees. Petitions

of The Baltimore and Ohio Railroad Company, The Delaware, Lackawanna and Western Railroad Company, The New York Central Railroad Company, The Pittsburgh and Lake Erie Railroad Company, and The Reading Company for leave to intervene as appellants were refused, but permission was granted to file a brief under our Rule 46 and to be heard at oral argument. The Erie Railroad Company and The Lehigh Valley Railroad Company also joined in the brief.

While the instant proceeding was pending before it, the Commission undertook to suspend the operation of certain revised passenger schedules by virtue of an order appealed from at No. 178, October Term, 1958. That appeal has been disposed of this day in *Pennsylvania Railroad Co. v. Pa. P. U. C.,* 187 Pa. Superior Ct. 587, 145 A. 2d 360.

We wish to emphasize at the outset of our discussion that the interests of the public will always receive full protection from this court. It is important to point out the narrow issue involved in this appeal. At the risk of over-simplification, it may be described as a question merely of timing. Appellant does not seek to impose any restraint upon the regulatory powers of the Commission as they have been understood and exercised since the enactment of the Public Utility Law,[1] and prior thereto under the Public Service Company Law of 1913. No objection is advanced regarding the requirement that notice be given to the Commission of proposed revisions in the schedules of its passenger train service. In fact, as shown not only by the record in the instant appeal, No. 313 October Term 1958, but also by the record in the companion appeal No. 178 October Term 1958, appellant and the other railroads concerned have for a number of years

---

[1] Act of May 28, 1937, P. L. 1053, 66 P.S. 1101 et seq.

voluntarily followed the informal practice of giving such notice in advance. No question is raised as to the right of the Commission to regulate passenger train service or to require adequate service, even to the extent of the restoration of trains eliminated or the operation of new trains if evidence developed in a proper hearing establishes justification therefor. Cf. *Erie Railroad Co. v. P. S. C.*, 99 Pa. Superior Ct. 443. The crux of the controversy is appellant's position that, in the absence of express authority to that effect from the legislature, the Commission may not interfere with the discretion of management in making proposed schedule changes, and here we advert to the question of timing, in advance of hearing. In short, appellant contends that its obligation is to provide such degree of passenger train service which the interests of the public require, but that management may initially exercise its own judgment in this respect. Appellant concedes the authority of the Commission, either upon complaint or upon its own motion, to correct any such exercise of judgment which is shown, after hearing, to adversely affect the interests of the public.

The Commission asserts in its brief that "The primary issue in this appeal at No. 313 October Term 1958 is whether the Pennsylvania Public Utility Commission has statutory warrant to suspend proposed passenger train schedules changes, prior to having a hearing respecting each such proposed change". It is argued that, under the present Public Utility Law, the Commission already possesses the power invoked by the adoption of new Rule 10. We here point out that this power, if it does exist, has never been previously exercised. This is clearly apparent from the Commission's official News Release No. 107 describing the effect of the new regulations (italics supplied) : "The Public Utility Commission today ordered railroads in

Pennsylvania *for the first time* to file formal applications for approval to make passenger train service curtailments. The PUC revised its Railroad Regulations *in an unprecedented move* that requires rail carriers to get approval prior to 'removal, elimination or substantial change' in passenger train schedules".

The area of administrative activity is not boundless; the Commission's power is statutory, and the legislative grant of power to act in any particular case must be clear: *Felix v. Pa. P. U. C.*, 187 Pa. Superior Ct. 578, 146 A. 2d 347. See also *Day v. P. S. C.*, 312 Pa. 381, 167 A. 565; *West Penn Railways Co. v. Pa. P. U. C.*, 135 Pa. Superior Ct. 89, 4 A. 2d 545. The Commission derives its authority from legislative action, and its powers are confined to those specifically declared: *Pittsburgh v. Pa. P. U. C.*, 157 Pa. Superior Ct. 595, 43 A. 2d 348. The Public Utility Law covers only such matters as are expressly or by necessary implication included within its terms. See *Citizens Passenger Railway Co. v. P. S. C.*, 271 Pa. 39, 114 A. 642. The requirement of due process applies to proceedings before administrative tribunals as well as before judicial bodies: *Armour Transportation Co. v. Pa. P. U. C.*, 138 Pa. Superior Ct. 243, 10 A. 2d 86. Among the restraints affecting the performance of administrative and quasi-judicial functions is the requirement that the agency so acting shall afford the interested parties a fair and open hearing, that it make findings of fact so that its action may be reviewed by the courts, and that it assign a reason for its action: *Erie Lighting Co. v. Pa. P. U. C.*, 131 Pa. Superior Ct. 190, 198 A. 901.

As a public utility, appellant is required by Section 401 of the Public Utility Law (66 P.S. 1171) to furnish adequate service and facilities in conformity with the regulations and orders of the Commission.

To a similar effect is Section 403 (66 P.S. 1173) dealing with the operation and distribution of appellant's facilities as a common carrier. However, it is well established that a public utility has the right to manage its own affairs to the fullest extent consistent with the public interest: *Hostetter v. P. S. C.,* 110 Pa. Superior Ct. 212, 168 A. 493; *Abington Electric Co. v. Pa. P. U. C.,* 131 Pa. Superior Ct. 200, 198 A. 906; *Northern Pennsylvania Power Co. v. Pa. P. U. C.,* 333 Pa. 265, 5 A. 2d 133. It is not within the province of the Commission to interfere with the management of a utility unless an abuse of discretion or arbitrary action is established: *Lower Chichester Township v. Pa. P. U. C.,* 180 Pa. Superior Ct. 503, 119 A. 2d 674. And see *Penn-Harris Hotel Co. v. Pa. P. U. C.,* 166 Pa. Superior Ct. 394, 71 A. 2d 853. As was said in *Coplay Cement Manufacturing Co. v. P. S. C.,* 271 Pa. 58, 114 A. 649 (italics supplied) : "It was not intended by the legislature that the commission should be a board of managers to conduct and control the affairs of public service companies, but it was meant that where certain of their powers and obligations had intimate relation to the public through fairness, accommodation or convenience, the commission should have an *inquisitorial and corrective authority* to regulate and control the utility in the field specifically brought within the commission's jurisdiction". Heretofore, this has been the policy of the commission with regard to time schedules. In *Diffendorfer v. Safeway Trails,* 31 Pa. P. U. C. 456, the Commission said: "The adjustment of schedules to meet demand for service is primarily a function of management. This Commission will not intervene unless the rescheduling is unreasonable and adverse to the public interest". See also *City of Wilkes-Barre v. White Transit Co.,* 33 Pa. P. U. C. 758.

No exception was taken by appellant to the portion of new Rule 10 which provides that Commission approval shall be obtained prior to the abandonment of intrastate passenger service, and that requirement is not questioned on this appeal. Indeed, said portion of the new regulation appears to be merely a restatement of the language of the legislature in Section 202(d) of the statute (66 P.S. 1122).[2] Under this section the Commission is authorized to determine initially whether abandonment of service is in the public interest: *Commuters' Committee v. Pa. P. U. C.*, 170 Pa. Superior Ct. 596, 88 A. 2d 420. That case involved a request by the Reading Company to abandon all passenger service on a branch line. "Abandonment necessarily implies the voluntary or intentional act of the party having facility, right or power to relinquish it": *Emerald Coal and Coke Co. v. Equitable Gas Co.*, 378 Pa. 591, 107 A. 2d 734. It is significant that abandonment has been previously viewed as a complete cessation of service, and the provisions of Section 202(d) have been applied only in that type of situation. While decisions of utility commissions of other states, and the opinions of their appellate courts, are not controlling, *Penn-Harris Hotel Co. v. Pa. P. U. C.*, supra, 166 Pa. Superior Ct. 394, 71 A. 2d 853, relevant discussions supporting appellant's position appear in a number of such cases.[3] If we were

---

[2] "Upon approval of the commission, evidenced by its certificate of public convenience first had and obtained, and upon compliance with existing laws, and not otherwise, it shall be lawful . . . (d) For any public utility to dissolve, or to abandon or surrender, in whole or in part, any service, right, power, franchise, or privilege".

[3] *Nashville, C. and St. L. Ry. v. Hannah*, 27 S.W. 2d 1089 (Tennessee); *In re New York Cent. Train No. 421*, 119 N.E. 2d 77 (Ohio); *Darby v. Southern Ry. Co.*, 10 S.E. 2d 465 (S. Carolina); *State v. Northern and Pacific Ry. Co.*, 75 N.W. 2d 129 (N. Dakota);

to construe the portion of Rule 10 here under consideration to come within the statutory provision governing abandonment, it would be superfluous. Moreover, entirely aside from the question whether a schedule change removing or eliminating a particular train may be viewed as a partial abandonment, Section 202(d) requires the issuance of a certificate of public convenience. The controversial provision of Rule 10 establishes a procedure other than that required to obtain, and an approval evidenced by something other than the issuance of, a certificate of public convenience. We are convinced that such a procedure and such an approval were not within the contemplation of the legislature in the enactment of Section 202(d).

It is the Commission's further position that authority to enact the controversial portion of new Rule 10 is found in Sections 901 and 902 (66 P.S. 1341 and 1342). Section 901 provides that "The commission shall have general administrative power and authority to supervise and regulate all public utilities doing business within this Commonwealth. The commission may make such regulations, not inconsistent with the law, as may be necessary or proper in the exercise of its powers or for the performance of its duties under this act". Discussing this section in *Lancaster Transportation Co. v. Pa. P. U. C.*, 169 Pa. Superior Ct. 284, 82 A. 2d 291, in which case an order of the Commission was reversed, President Judge RHODES said: "The Commission by its action or by promulgation of general rules and orders cannot go beyond the bounds of its statutory authority". And see *Aizen v. Pa. P. U. C.*, 163 Pa. Superior Ct. 305, 60 A. 2d 443, in which it

---

*Thompson v. Boston & M. R. R.*, 166 A. 249 (New Hampshire). The only case cited by the Commission to the contrary is *Great Northern Ry. v. Board of R. R. Commissioners*, 298 P. 2d 1093 (Montana) in which there was a convincing dissent.

was said: "The commission, in matters within its administrative discretion, may adopt and follow a policy, but the exercise of such discretion is not without some limitation. Its findings and orders must be based upon the evidence in the case before it".

Section 902 provides that "In addition to any powers hereinbefore expressly enumerated in this act, the commission shall have full power and authority, and it shall be its duty, to enforce, execute, and carry out, by its regulations, orders, or otherwise, all and singular the provisions of this act, and the full intent thereof . . . The express enumeration of the powers of the commission in this act shall not exclude any power which the commission would otherwise have under any of the provisions of this act". See *Latrobe Bus Service v. Pa. P. U. C.*, 175 Pa. Superior Ct. 164, 103 A. 2d 442. The Commission contends that, under the provisions of this section, it has the power to suspend schedule changes in advance and to require appellant to first prove that the proposed changes are reasonable. *Dillner Transfer Co. v. Pa. P. U. C.*, 186 Pa. Superior Ct. 526, 142 A. 2d 419, is cited for the proposition that, "Within the limitations of the Public Utility Law and in furtherance of it, the commission may promulgate general rules and regulations governing the conduct of utilities". The language of President Judge RHODES immediately preceding the foregoing quotation is highly significant, as follows: "The power of the commission to make regulations . . . is not without limitation. The purpose of such regulations is to carry into effect the will of the Legislature as expressed by the statute, but such regulations are subject to judicial review . . . The commission may not by promulgating a general order or general regulation avoid the necessity of requiring substantial evidence to support its action in a particular case . . . it may not by such general order

or general regulation adopt a policy which may be used as a substitute for evidence in a proceeding before it . . . and it may not avoid the constitutional requirement of due process in a particular proceeding by reference to a general rule or regulation setting forth some policy".

Nowhere in the statute can we find reference to, or provision for, a proceeding labeled "application" other than an "application for a certificate of public convenience". Section 404 (66 P.S. 1174) provides as follows (italics supplied) : "Every common carrier shall, whenever the commission shall, *after hearing* had upon its own motion or upon complaint, deem it necessary or proper for the accommodation, convenience, and safety of the public in the transportation of passengers, transfer such passengers to or from another part of the system of such common carrier and, to this end, *shall make proper and convenient arrangement or adjustment of the time schedules* of such common carrier . . ." This section is addressed to the problem of transfers and time schedules and requires a hearing, either upon motion of the commission or after complaint. To the same effect are Sections 412 and 413 (66 P.S. 1182 and 1183) dealing with standards of, and proper, service and facilities. By their very terms, these sections cover situations in which existing time schedules may fall short of providing adequate service. In such instances, the Commission is authorized to take action, but only after a hearing. Indeed Section 1008 (66 P.S. 1398), dealing with investigations by the Commission, sets forth that "it shall make no order without affording the parties affected thereby a hearing".

A persuasive analogy is furnished in the affirmance by our Supreme Court of the original refusal by the Commission to suspend proposed rates in advance of

a hearing. See *Coplay Cement Manufacturing Co. v. P. S. C.*, supra, 271 Pa. 58, 114 A. 649. It was necessary for the legislature to amend the statute then in effect so as to expressly grant this authority to the Commission.[4] The power to suspend rates is now incorporated in Section 308 of the Public Utility Law (66 P.S. 1148). While a public utility is required by Section 302 (66 P.S. 1142) to file rate tariffs with the Commission, there is no such requirement in the statute so far as train operations and time schedules are concerned.

We find it unnecessary to pass upon appellant's contentions that there was no evidence presented to support the nisi rule, and that the rule in its final form differed so materially from the nisi rule that it should have been subjected to hearing. Nor do we reach the contention that Rule 10 is unlawful as applied to the operation of interstate trains.

In all fairness, it should be further noted that the parties have not advanced the contention that this appeal is not properly before the Court, and no question in this regard was raised or argued. We believe that it would be unwise, especially at this late stage in the proceeding and on our own motion, to delay or postpone decision of the important issue presented by this appeal on the technical ground, belatedly suggested, that we are being called upon to render an advisory opinion in advance of an actual application of the regulation.

In conclusion, we are not saying in this opinion that the interests of the public are to be unprotected, or that appellant is to be free from regulation. What we are saying is that appellant has the initial right to adjust its train operations and time schedules as a matter of managerial discretion, subject to corrective

---

[4] See the Act of June 3, 1933, P. L. 1526.

action by the Commission after investigation and hearing. We are convinced that the "unprecedented" requirement of prior approval of such schedule changes is an extension of the power of the Commission which is unwarranted by the Public Utility Law, and that the new regulation is legislation rather than rule making.

To the extent that Rule 10 requires application to and approval by the Commission "prior to the removal, elimination, or substantial change in the schedule of any passenger train" the order of the Commission dated March 24, 1958, is reversed, costs to be paid by the Commission.

---

DISSENTING OPINION BY RHODES, P. J.:

I find the majority opinion unacceptable for two basic reasons. First, it is tantamount to an advisory opinion in advance of the application of a regulation promulgated by the Pennsylvania Public Utility Commission;[1] secondly, the advice that is given is an erroneous interpretation of the Public Utility Law as it relates to the power of the commission to make regulations in furtherance of the provisions of the law.

The commission by the promulgation of new Rule 10 supplemented its Railroad Regulations. This appeal, as the majority states, is taken from the "requirement" of the new rule. I think it is obvious that the appeal is not properly before this Court. The function of rule making is to be distinguished from action of a quasi judicial nature taken by the commission. Rule making is essentially legislative; the promulgation of a general rule applicable to all or a particular segment of the utilities in this Commonwealth is not

---

[1] "Organically, courts are not instituted to render advisory opinions either by way of a declaratory judgment or otherwise; . . ." *Schoenbrun v. Nettrour,* 360 Pa. 474, 476, 61 A. 2d 868, 869.

in itself a function from which a *direct appeal* may be taken. It is true that rules and regulations are subject to judicial review, but only when they become involved in a justiciable proceeding.[2]  Cf. *Lancaster Transportation Company v. Pennsylvania Public Utility Commission,* 169 Pa. Superior Ct. 284, 82 A. 2d 291. The distinction between the quasi-judicial function and the rule making function of the commission was fully discussed in *W. J. Dillner Transfer Company v. Pennsylvania Public Utility Commission,* 186 Pa. Superior Ct. 526, 531, 142 A. 2d 419. We there determined that the rule making function being legislative in character is not such as to require even the procedural due process requirements of notice and hearing.  If notice and hearing are not required, it necessarily follows that an appeal may not be taken.  The fact that the commission in the present case did afford a hearing does not change the essential nature of the proceeding.  The hearing was equivalent to the hearings held by the Legislature to gain information upon which to formulate needed legislation.  It cannot be said that it was a hearing of the judicial type affecting the rights of individual railroads as distinguished from all railroads, or that the railroads were "parties" to the proceedings in the usual sense.  This appeal from the promulgation of the general rule or regulation is comparable to an appeal taken directly from the enactment of a statute by the Legislature; such an appeal is premature and improper.[3]  To render an opinion on

---

[2] See *Pennsylvania Railroad Company v. Driscoll,* 336 Pa. 310, 9 A. 2d 621; *United States v. Berwind-White Coal Mining Company,* 274 U. S. 564, 47 S. Ct. 727, 71 L. Ed. 1204.

[3] Although the language in section 1112 of the Public Utility Law, 66 PS §1442, is broad, it does not appear that the promulgation of a rule by the commission is such an act which is conclusive upon utilities so as to permit them to take a direct appeal therefrom.

this appeal is simply to give advice in advance of the application of the rule to a specific utility. See *Pittsburgh v. Pennsylvania Public Utility Commission,* 157 Pa. Superior Ct. 595, 598, 43 A. 2d 348. I would therefore quash the appeal.

Furthermore, as I view it, the majority clearly has erred in its interpretation of the powers of the commission under the Public Utility Law in this instance. Rule 10 relates to the "Curtailment of Service" and provides that, with certain exceptions, "An application shall be filed with and approved by the Commission prior to the removal, elimination, or substantial change in the schedule of any passenger train . . ." The rule in this respect is a limited one. It does not require prior application or approval for every change in the schedule such as those normally made in the institution of daylight saving time or the reversion to standard time. The rule applies only to the "removal, elimination, or substantial change" in service, that is, a reduction in the level of service provided to the public. Presumptively the existing service is necessary to the public interest. "Service" is an extremely broad concept in the Public Utility Law; it includes "any and all things furnished or supplied, and any and all facilities used, furnished, or supplied by public utilities, . . ." Section 2 (20) of the Law, 66 PS §1102 (20). There is no doubt that the furnishing of each and every train appearing on the schedule of a railroad is a service within the meaning of the Law; and, under section 401 of the Law, 66 PS §1171, it is a service which the utility must maintain at an adequate, efficient, safe, and reasonable level. See, also, section 403 of the Law, 66 PS §1173. In order that a utility may not of its own accord eliminate all or any part of the service which it renders, the Legislature set forth a requirement that approval of the commission be obtained in

advance for any such diminution. Section 202 (d) of the Law, 66 PS §1122, very definitely provides: "Upon approval of the commission, evidenced by its certificate of public convenience *first had and obtained,* and upon compliance with existing laws, and not otherwise, it shall be lawful: . . . (d) For any public utility to dissolve, or to abandon or surrender, *in whole or in part,* any service, right, power, franchise, or privilege: . . ." (Italics supplied.) It seems obvious that the removal or elimination of a passenger train from an existing schedule is an abandonment of a service. Of the same nature is the substantial change in the schedule of a train. If a train normally running at a certain time is re-scheduled to run at a time substantially different than its original time, it is tantamount to an elimination of the original service. The majority unduly restricts the application of section 202 (d) of the Law, 66 PS §1122, to the complete cessation of service.[4] The language of this section distinctly indicates that it is much broader, applying not only to the complete cessation of service but also to the cessation of service "in whole or in part." See *New Castle v. Pennsylvania Public Utility Commission,* 172 Pa. Superior Ct. 569, 571, 94 A. 2d 57. Since the elimination of a train or trains comes within the provision of section 202 (d) of the Law, it is also apparent that the commission, acting under the administrative and rule making powers granted by sections 901 and 902 of the Law, 66 PS §§1341, 1342, had the authority to promulgate Rule 10, not inconsistent with the Law, as necessary and proper for the performance of its duties under the Law. Of course, there are limitations on the power of the com-

---

[4] Appellant recognizing that a certificate of public convenience is required for the abandonment of intrastate passenger train service contends that approval for scheduled changes and train curtailments short of abandonment of service is not required.

mission to promulgate regulations as this Court pointed out in *W. J. Dillner Transfer Company v. Pennsylvania Public Utility Commission*, supra, 186 Pa. Superior Ct. 526, 532, 142 A. 2d 419.[5] But none of the restrictions or limitations mentioned in the *Dillner* case or prior cases are applicable to the present situation. Here the commission has acted within the limitations of the Public Utility Law and in furtherance of it.

Consequently, I am compelled to dissent from the action of the majority in depriving the commission of its obvious power, and also from the failure of this Court to quash the appeal on its own motion as premature.

GUNTHER, J., joins in this dissent.

---

[5] While it is not necessary for the commission to give notice and hold a hearing prior to promulgating the rule or regulation, it would be necessary to satisfy the procedural requirements of due process when the rule or regulation is involved in a particular proceeding. *W. J. Dillner Transfer Company v. Pennsylvania Public Utility Commission*, 186 Pa. Superior Ct. 526, 533, 142 A. 2d 419.